**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISE PARIS, LTD. and RAINBOW USA, INC., | Case No.: 15-CV-3250-PKC |
| Plaintiffs, | |
| v. | |
| STANDARD FABRICS INTERNATIONAL, INC., | |
| Defendant. | |

| | |
|---|---|
| STANDARD FABRICS INTERNATIONAL, INC., | |
| Counterclaimant, | |
| v. | |
| LOUISE PARIS, LTD.; RAINBOW USA, INC.; and DOES 1-10, | |
| Counterdefendants. | |

**STANDARD FABRICS INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.   INTRODUCTION ………………………………………………….……..1

II.  STATEMENT OF FACTS…...………………………………………………...1

III. ARGUMENT…..……………………………………………………………4

    A.   Standard of Review…………………………………………..………………4

    B.   Counterdefendants are Liable for Copyright Infringement……………………....5

        1.   SFI's Ownership of the Subject Design is

            Beyond Reasonable Dispute…………………………….………………..…..5

        2.   Infringement Should Be Found…………………………….……………...…7

            a.   Counterdefendants Accessed the Subject Design………………...7

            b.   The Subject Design and the Accused Design are

               Substantially Similar………………………………………………9

    C.   Louise Paris is Liable for Willful Copyright Infringement……………………..14

IV.  CONCLUSION………………………………………………………..………………17

## <u>TABLE OF AUTHORITIES</u>

*ABKCO Music, Inc. v. Harrisongs Music, Ltd*., 722 F.2d 988 (2d Cir.1983)……………………8

*Acuff-Rose Music, Inc. v. Jostens, Inc*., 988 F. Supp. 289, 293 (S.D.N.Y. 1997)………………..9

*Aimster Copyright Litigation,* 334 F.3d 643, 650 *(7th Cir. 2003)*………………………………14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)………………………………..4, 5

*Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir. 1946)…………………………………………….8

*Atari. Inc. v. North American Philips Consumer Elecs. Com.*,

      672 F.2d 607, 614 (7th Cir. 1982)……………………………………….....10, 12, 13

*Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 354-55 (4th Cir. 2001)………………………8

*Carol Barnhart, Inc. v. Econ. Cover Cor*p., 773 F.2d 411, 414 (2d Cir. 1985),………………….6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)……………………………………...….4

*Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1969)……12

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,*

      259 F.3d 1186, 1195 (9th Cir. 2001)…………………………………………………15

*Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)……….…………..6

*Feist Publications. Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991)………………...5

*Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)………………………………….6

*Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)……………………………………….7

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc*., 780 F.2d 189, 192 (2d Cir.1985)………………..….6

*Island Software & Computer Serv. v. Microsoft Corp.,* 413 F.3d 257 (2d Cir. 2005)…………..14

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 54-55 (2d Cir. 2003)………………………….7, 9

*Just in Materials Designs, Ltd. v. Arise Textile, Inc.,*

      1980 U.S. Dist. WL 1138  (S.D.N.Y. Mar. 13, 1980)…………………………………13

*Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.,* 602 F.Supp. 151, 155 (S.D.N.Y.1984)…….16

*Knitwaves, Inc. v. Lollytogs Ltd*., 71 F.3d 996, 1001 (2d Cir. 1995)………………………10, 16

*L A Printex Industries Inc. v. A H Schreiber Co Inc*., 2:11-cv-7115-SVW (C.D. CA 2011)…..16

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 847-48 (9th Cir. 2012)……………8

*L A Printex Industries Inc. v. Mangel Stores Corp.,* 2:11-cv-07115-SVW-CW (C.D. CA 2009)16

*Lauratex Textile Corp. v. Allton Knitting Mills Inc.*,

      517 F.Supp. 900, 903-4 (S.D.N.Y.1981)……………………………………….…...…16

*Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995)……………………………………8, 9, 14

*Malden Mills, Inc. v. Regency Mills, Inc.*, 626 F.2d 1112, 1113 (2d Cir. 1980)……………..…10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)………………….4

*New Look Pty. Ltd. v. Louise Paris Ltd.*, 1:11-cv-00663 (E.D. VA 2011)……………………....16

*New Look Pty. Ltd. v. Louise Paris Ltd.*, 1:11-cv-06433 (S.D.N.Y. 2011)……………………...16

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)…………………..……..13

*Oboler v. Goldin*, 714 F.2d 211, 212 (2d Cir.1983)……………………………………………...6

*Peter Pan Fabrics, Inc. v. Manin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)……...…….10

*Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)………………………………..4

*Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)………………………………………………8

*R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)………………….....5

*Scott v. Harris*, 550 U.S. 372, 380 (2007)………………………………………………………..4

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U. S. 390 (1940)………………….……...13

*Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*,

      490 F.2d 1092, 1094 (2d Cir. 1974)…………………………………………….…13

*Spectravest, Inc. v. Fleet Street, Ltd.,* 1989 U.S. Dist. WL 135386 (N.D. Cal. Aug. 23, 1989)...15

*Stratchborneo v. Arc Music Corp.*, 357 F.Supp.1393, 1403 (S.D.N.Y. 1973)……………………9

*The Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*,

      04 Civ. 5002, 2005 WL 2063819, at *3 (S.D.N.Y. Aug. 24, 2005)…………………...16

*Testa v. Janssen*, 492 F.Supp.198, 203 (W.D. Pa. 1980)……………………………..……...…9

*Unicolors Inc v. Louise Paris Ltd*., 2:14-cv-04474-PA-MAN (C.D. CA 2014)…………………16

*Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998)……………………………………...…..4

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108-09 (2d Cir. 2001)………….……..5, 7, 14

**Statutes**

17 U.S.C. § 106……………………………………………………………..……...5

17 U.S.C. § 501(a)…………………………………………………………...…….5

17 U.S.C. §106(2)…………………………………………………………..…………….5

17 U.S.C. §106(3)………………………………………………………….…..5

**Rules**

Fed. R. Civ. P. 56(c)(2)……………………………………………….………………..4

**Treatises**

3 M. Nimmer, Nimmer on Copyright § 12.11[B], at 12-79 to 12-80 (1985)……………………6

3 M. Nimmer, Nimmer on Copyright § 13.03[A], at 13-20 to 13-20.1 (1985)…………………13

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.  INTRODUCTION

This is a straightforward case of copyright infringement: an unethical apparel company obtained a garment from a retail store bearing artwork for which it already had a fabric header, copied the design on said garment onto thousands of its own garments, and sold those garments nationwide. Counterclaimant Standard Fabrics International, Inc. ("SFI") seeks a ruling that this conduct constitutes willful copyright infringement. Counterdefendants' liability for infringement of its copyrights in this case is beyond reasonable dispute. This motion should be granted in its entirety.

## II.  STATEMENT OF FACTS

SFI is a Los Angeles-based textile company. SFI Statement of Undisputed Facts ("SUF") ¶ 1. It creates original fabric designs or purchases the exclusive rights to designs that are created by reputable art studios. *Id*., at ¶ 2. SFI sells fabric featuring its proprietary designs to its customers, which then manufacture SFI's fabric into garments that are sold to retailers. *Id*., at ¶ 3. It is critical to SFI's business to be the exclusive source of its designs, because this design portfolio allows it to stand out in the market and compete against other companies that charge lower rates but are unable to offer trendy, fashion-forward designs. *Id.*, at ¶ 4. All of SFI's customers and prospective customers are advised by SFI's salespeople that SFI's designs are copyrighted and proprietary. *Id.*, at ¶ 5. SFI further provides written notice of the proprietary nature of its designs with the samples, headers, e-mails containing images of its designs, and production orders provided to its customers. *Id*., at ¶¶ 6, 9, Exh. 6.

SFI owns all rights to a design it created and titled "7851" (the "Subject Design"). *Id.* at ¶ 7, Exh. 1. This design is an original two-dimensional detailed geometric design that employs modular chevrons in multiple layers. *Id*. at ¶ 8. It was developed by SFI for use on printed fabrics, and a variety of color combinations (or "colorways") were created by the company in hopes of soliciting purchases from its clients. *Id*. at ¶ 9, Exh. 8. Designer Turia Ostling created

the Subject Design for SFI, who used SFI design 7804 as inspiration.[1] *Id.* at ¶ 10. SFI formatted and finalized the Subject Design using computer drafting utilities so that the Subject Design could be printed on textiles. *Id.* at ¶ 11. At all relevant times, SFI owned the Subject Design. *Id.* at ¶ 12, Exh. 1. SFI applied for and received U.S. Copyright Certificate of Registration No. VA 1-894-565 for the Subject Design, as part of SFI's "Spring Summer 2014 collection," with an effective date of registration of November 27, 2013. Id. at ¶ 13, Exh. 1.

SFI first sampled and sold fabric bearing the Subject Design to its customers in or around August of 2013. *Id.* at ¶ 24, Exh. 4. SFI continued to market and sell fabric bearing the Subject design to its clientele, sampling and selling over 375,000 yards of fabric bearing the Subject Design to customers nationwide. *Id.* at ¶ 25, Exh. 4. Before Louise Paris created the infringing design at issue in this case ("Accused Design"), Standard had already distributed over 175,000 yards of fabric bearing the Subject Design to customers across the country. *Id.* at ¶ 26, Exh. 5.

Louise Paris and SFI enjoyed a working relationship before Louise Paris began copying Standard's artwork without permission. *Id.* at ¶ 27, Exhs. 5, 9. This relationship included numerous meetings at which Louise Paris reviewed SFI's line of fabrics, which included the Subject Design. Id. SFI provided samples, including a fabric header of the Subject Design, to Louise Paris in hopes of eliciting production orders for fabric. *Id.* at ¶ 28, Exhs. 5, 9. Louise Paris never placed a full production order with SFI. *Id.* at ¶ 29, Exh. 5. Rather, it copied the Subject Design and ordered the manufacture of nearly 12,000 units of garments featuring the Accused Design from manufacturers in Asia. *Id.* at ¶ 30, Exh. 10.

SFI first discovered that Louise Paris had copied its artwork when SFI discovered retailer Rainbow to be selling garments bearing the Accused Design in early 2015. *Id. at ¶* 31, Exh. 7.

---

[1] Design 7804 was also created for SFI by Turia Ostling. SUF ¶ 14, Exh. 2. 7804 was inspired by preexisting SFI designs 6450 and 4002, for which SFI also holds copyright registrations. *Id.* at 15, Exh. 2. Design 4002 was based on an original artwork from Bernini Studio s.r.l., a design studio located in Como, Italy. *Id.* at ¶ 16, Exh. 3. In May, 2011 SFI purchased all rights to that design from Bernini Studio. *Id.* at ¶ 17, Exh. 3.

On or about April 7, 2015, SFI sent cease and desist demands to Rainbow and Louise Paris in connection with Counterdefendants' infringements of SFI's rights in the Subject Design. *Id.* at ¶ 32, Exh. 14. After receiving notice of SFI's claims, and instead of responding meaningfully to the cease and desist letters, Rainbow and Louise Paris filed a declaratory relief action in this district. *Id.* at ¶ 33.

On October 12, 2015 SFI took the deposition of Louise Paris' Fed. R. Civ. P. 30(b)(6) designee. *Id.* at ¶ 34, Exh. 9. At deposition, Louise Paris admitted not only that it obtained the header of the Subject Design from SFI, but also that it referenced a particular skater tank dress purchased from retailer Wet Seal on or about May 23, 2014 in creating the Accused Design. *Id.* at ¶ 35, Exh. 9. The skater tank dress from which Louise Paris copied was comprised of SFI fabric. *Id.* at ¶ 36, Exhs. 6, 13. Specifically, SFI sold the fabric comprising the Wet Seal dress to its customer, garment manufacturer Ikeddi Enterprises, Inc. ("Ikeddi"), which manufactured the fabric into garments that it sold to Wet Seal. *Id.* at ¶ 37, Exhs. 6, 13.

The sales chain from SFI to Ikeddi to Wet Seal to Louise Paris is not in dispute. SFI sold the fabric printed with the Subject Design to Ikeddi in the exact Black/Neon Lime colorway featured on the Wet Seal garment that Louise Paris purchased and duplicated. *Id.* at ¶ 38, Exhs. 9, 11, 13. Ikeddi also used SFI's internal style designation for the Subject Design, "7851," to identify the dress bearing the Subject Design in the line sheet it presented to Wet Seal. *Id.* at ¶ 39, Exh. 13. On or about February 7, 2014, Wet Seal placed an order with Ikeddi for 1,602 units of skater tank dresses featuring the Subject Design to be shipped in May 2014. *Id.* at ¶ 40, Exh. 13. On or about March 26, 2014 SFI shipped 4,956 yards of fabric featuring the Subject Design in Black/Neon Lime to Ikeddi. *Id.* at ¶ 41, Exh. 6. SFI shipped another 713 yards of fabric featuring the Subject Design in Black/Neon Lime to Ikeddi on or about April 15, 2014. *Id.* at ¶

42, Exh. 6.[2] Louise Paris admits that it purchased the skater tank dress from Wet Seal, and that Wet Seal purchased the garment from Ikeddi. *Id.* at ¶ 44, Exh. 9.

A comparison SFI's Subject Design and the Accused Design reflects copying. *Id.* at ¶ 45. Louise Paris' blatant reproduction of the Subject Design from a completed garment comprised of SFI's fabric, after having been provided samples and a fabric header for the Subject Design by SFI, establishes that Louise Paris' infringement was willful or, at a minimum, reckless. *Id.* at ¶ 54, Exhs. 9, 11.

Given the above, a finding of liability for willful infringement is proper.

## III.   ARGUMENT

### A.   Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring trial. *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)); *see also Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must set forth "concrete

---

[2] These full production orders came after SFI had sampled the Subject Design to Ikeddi in many colorways, including Black/Neon Lime, from in or about December 2013. SUF ¶ 43, Exh. 6.

particulars." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted," *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

     *B.*     *Counterdefendants are Liable for Copyright Infringement*

     To succeed on its copyright infringement claim, the claimant must show ownership of the allegedly infringed material and demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108-09 (2d Cir. 2001)*; see also* 17 U.S.C. § 501(a) (infringement occurs when alleged infringer engages in activity listed in § 106). One of these rights is the right to prepare derivative works from the copyrighted material. 17 U.S.C. §106(2). Another is the exclusive right to distribute and sell product bearing the copyrighted work. 17 U.S.C. §106(3) ("to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending"). Both of these rights have been violated by the Counterdefendants here.

     *1.*     *SFI's Ownership of the Subject Design is Beyond Reasonable Dispute.*

     SFI owns the Subject Design. SFI has presented evidence reflecting the provenance of the design, from its sources of inspiration to the physical drafting of the design, as well as its registration with the Copyright Office. Because all credible evidence reflects that SFI created the Subject Design as an original artwork, and Counterdefendants failed to produce any evidence to rebut the presumption of ownership afforded by SFI's registration for the Subject Design, SFI's must be held to be owner of the Subject Design.

     The Subject Design is an original work of art that was created and put in repeat[3] for use on fabric by SFI. SUF ¶ 18, Exh. 1. An original work is one that is both independently created, *i.e.*, not copied, and creative. *Feist Publications. Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340,

---

[3] "In repeat" is a term of art meaning that a designer develops a design so that it looks consistent and proper as it is repeatedly printed across the bolts of fabric.

345 (1991). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Id.* The Subject Design was created for SFI by Turia Ostling, who used SFI design 7804 as inspiration. SUF ¶¶ 14-15, Exh. 2. The creation of the design, and its underlying source artworks were memorialized by SFI in its internal design registration form for the Subject Design, which SFI routinely uses to document the origins and creation of each of its designs as they are created and named. Id. at ¶ 20, Exhs. 2-3. This form, dated August 29, 2013, confirms that the Subject Design was created for SFI by Ms. Ostling, who was "[i]nspired by print 7804 and added pop colors." Id. at ¶ 21, Exhs. 2-3. With the finalization of this document, the Subject Design was officially designated as "7851." SUF ¶ 22, Exhs. 2-3.[4]

Moreover, SFI holds a duly-issued copyright registration covering the Subject Design. This registration presumptively establishes that the design is owned by SFI. Id. at ¶¶ 13, 23, Exh. 1. Under § 410(c) of the Copyright Act, the Certificate of Registration constitutes *prima facie* evidence of the validity of plaintiff's copyrights, and all of the facts stated in the certificate thereof. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980). One of these facts is ownership. After making this *prima facie* showing, the burden shifts to Counterdefendants to rebut the presumption. *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) citing *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985).[5] To rebut the presumption, Counterdefendants must prove that SFI defrauded the Copyright Office, and that the putative fraud related to the underlying ability to register the work. 17 U.S.C.

---

[4] Additionally, all source artworks for design 7804 are owned in exclusivity by SFI. *See fn. 1, supra*.

[5] As stated by the court in *Carol Barnhart, Inc. v. Econ. Cover Corp*., the rebuttable presumption standard for the burden of proof in copyright infringement cases is a reflection of legislative intent: "[t]he plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so [...]" 773 F.2d 411, 414 (2d Cir. 1985), *quoting* H.Rep. No. 1476, 94th Cong., 2d Sess. 157, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5773; citing *Oboler v. Goldin*, 714 F.2d 211, 212 (2d Cir.1983); 3 M. Nimmer, Nimmer on Copyright § 12.11[B], at 12-79 to 12-80 (1985).

§ 411(b)(1). Counterdefendants have not, and cannot, provide any evidence that SFI defrauded the Copyright Office in registering the Subject Design or that any putative fraud would have affected SFI's ability to register the work. Because SFI's presumption of validity and ownership cannot be rebutted, its ownership of the Subject Design is established.

All credible evidence reflects that SFI created the Subject Design and owns all elements thereof. The first prong of the infringement test is satisfied beyond a triable issue.

       2.     *Infringement Should Be Found.*

Counterdefendants infringed SFI's rights the Subject Design. "To establish infringement, the copyright owner must demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Yurman Design*, 262 F.3d at 110 (internal quotation marks omitted). Actual copying may be proved directly or indirectly. "[I]ndirect evidence of copying includes proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works." *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999). SFI can establish that Counterdefendants accessed the Subject Design and then created a reproduction of said design that is at least substantially similar to its source. Infringement should be found.

       a.     *Counterdefendants Accessed the Subject Design.*

Louise Paris obtained a header of the Subject Design from SFI, and purchased a garment comprised of SFI fabric bearing the Subject Design from Wet Seal. And the Accused Design is so similar to the Subject Design that it could not have been created in the absence of access. There is no triable dispute as to this element of the claim.

To show access, SFI need only establish that one of the Counterdefendants had "a reasonable opportunity to view" the Subject Design. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 54-55 (2d Cir. 2003) (citations omitted). SFI is not required to prove that one of the Counterdefendants actually saw the Subject Design: "it is enough to prove that the infringer (or

his intermediary) had the mere opportunity to see the work." *Id.*, *citing Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 354-55 (4th Cir. 2001). And, where the works in question are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access. *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997). *Accord Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995).

Louise Paris not only had the "mere opportunity" to see the Subject Design – it admits that it actually *did* see and copy from the Subject Design. SUF ¶ 46, Exhs. 9, 11. SFI provided Louise Paris with samples of the Subject Design, including a header of fabric printed with the Subject Design in or around late 2013. Id. at ¶ 47, Exh. 9. A few months later, Louise Paris purchased a dress from Wet Seal that that was comprised of SFI fabric featuring the Subject Design, and copied and slightly modified the Subject Design to create the Accused Design. *Id.* at ¶ 48, Exhs. 6, 9, 13. Under both scenarios, Louise Paris took direct access to the Subject Design before creating its infringing garments for Rainbow. As such, Counterdefendants' access is established.

Looking beyond Louise Paris' admissions of direct access to the Subject Design, Counterdefendants' access should be presumed given the widespread dissemination of the Subject Design preceding Counterdefendants' acts of infringement. Widespread dissemination of an allegedly infringed work gives rise to an inference of access where the work has had considerable commercial success or is readily available on the market. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 847-48 (9th Cir. 2012) (finding that distribution of approximately 50,000 yards of a textile design "immediately preceding defendants' alleged infringement," created a "reasonable possibility" that defendants accessed the design);  *see also ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988 (2d Cir.1983) (access inferred where song was number one on popular music charts for weeks); *Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir. 1946) (finding access inferable where "more than a million copies of one of [plaintiff's] compositions were sold; copies of others were sold in smaller quantities or

distributed to radio stations or band leaders or publishers, or the pieces were publicly performed"); *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 293 (S.D.N.Y. 1997) (drawing inference of access based on widespread dissemination, where allegedly infringed song was a top-five country hit at time of alleged infringement). Here, SFI's widespread sales of fabric bearing its Subject Design gives rise to the inference of access. SFI sampled and sold 175,000 yards of fabric bearing the Subject Design to a multitude of customers nationwide in the months immediately preceding Louise Paris' copying. SUF ¶¶ 26, 49, Exh. 4. The distribution of this large volume of fabric in the nationwide fashion and textile industry establishes that Counterdefendants at least had a reasonable opportunity to view the Subject Design. *Jorgensen*, 351 F.3d at 54-55.

Finally, infringement must still be found because the designs are strikingly similar. To establish "striking similarity," a copyright claimant "must demonstrate that 'such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source.'" *Testa v. Janssen*, 492 F.Supp.198, 203 (W.D. Pa. 1980), quoting *Stratchborneo v. Arc Music Corp.*, 357 F.Supp.1393, 1403 (S.D.N.Y. 1973)); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d at 56 ("where the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.'"), citing *Lipton*, 71 F.3d at 471. As discussed and illustrated below, the designs are so similar that an independent creation defense is implausible. As such, SFI satisfies the access prong of the infringement test.

      b.    *The Subject Design and the Accused Design are Substantially Similar.*

There is no triable question of fact as to the substantial similarity between the Subject Design and the Accused Design. Indeed, the designs are strikingly similar if not virtually identical. This prong of the infringement test is met.

In the Second Circuit, the test for unlawful substantial similarity is whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted

work." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1001 (2d Cir. 1995), *citing Malden Mills,*

*Inc. v. Regency Mills, Inc*., 626 F.2d 1112, 1113 (2d Cir. 1980); *see also Peter Pan Fabrics, Inc.*

*v. Manin Weiner Corp*., 274 F.2d 487, 489 (2d Cir. 1960) (there is substantial similarity between

the defendant's infringing work and the plaintiffs protected work where "the ordinary observer,

unless he set out to detect the disparities, would be disposed to overlook them, and regard their

aesthetic appeal as the same.").

      Under the ordinary observer test, it is clear that the Accused Design is so similar to the

Subject Design that any ordinary reasonable person would conclude that Louise Paris had

unlawfully appropriated material parts of the Subject Design's protectable expression. *Atari. Inc.*

*v. North American Philips Consumer Elecs. Com.*, 672 F.2d 607, 614 (7th Cir. 1982). An

examination of a side-by-side comparison of the two works reveals that practically every single

element of the Subject Design had been directly lifted and minimally modified in the Accused

Design, which  leaves the overall "aesthetic feel [of the two designs] as the same."  *Peter Pan*

*Fabrics, Inc.,* 274 F.2d at 489. The below comparison table illustrates the exactitude of

Counterdefendants' copying:[6]

///

///

---

[6] The comparison table is comprised of cropped images from Exhs. 1 and 7 filed concurrently
herewith. See Declaration of Scott A. Burroughs, ¶ 6.

Subject Design       Exemplar of Infringing Garment



Everything from the sequence of each distinct layer of the tiered, detailed, geometric chevron designs, and the number of each of the distinct geometric elements comprising the individual motifs within each layer, to the overall size, scale, and layout of those individual elements, points to Louise Paris' wholesale appropriation of the Subject Design. Indeed, an examination of the designs reveals that Louise Paris slightly modified only one design element, changing SFI's brushed rectangular pillar element into a pillar of triangles. Louise Paris' blanket misappropriation of the Subject Design is even more evident when examining close up elements of the Accused Design from Louise Paris' internal CAD design file with corresponding elements of the Black/Neon Lime Subject Design featured on the Wet Seal skater tank dress:[7]

///

///

_____

[7] The comparison table is comprised of cropped images from SFI's Subject Design featured on the Wet Seal skater tank dress (LP000011) and Louise Paris' internal design file for the Accused Design from Exhibit 11 (LP000008) submitted concurrently herewith. Ibid.

Subject Design Element              Accused Design Element



Louise Paris admitted that it obtained the garment bearing the Subject Design from Wet Seal and modified it to create the Accused Design. SUF ¶ 53, Exhs. 9, 11. But, such minor modifications are not sufficient for infringers to escape their liability for copying. In fact, such modifications actually support a finding of willful infringement. *See Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1969) ("While the trial court placed great emphasis on the minor differences between the two design patterns, we feel that the very nature of these differences only tends to *emphasize the extent to which the defendant has deliberately copied* from the plaintiff.") (emphasis added). *See also Atari, Inc. v. North American Philips Consumer Electronics Corp*., 672 F.2d 607, 619 (7th Cir. 1982) (defendant's "superficial changes [...] may be viewed as an attempt to disguise an intentional appropriation of [Plaintiff's] expression."), *superseded on other grounds*.

Likewise, in examining the determination of substantial similarity, Professor Nimmer states the following:

It is entirely immaterial that in many respects plaintiff's and defendant's works are dissimilar if in other respects similarity as to a substantial element of

plaintiff's work can be shown . . . . If substantial similarity is found, the defendant will not be immunized from liability by reason of the addition in his work of different characters or additional or varied incidents, nor generally by reason of his work proving more attractive or saleable than the plaintiff's.

3 NIMMER § 13.03[A], at 13-20 to -20.1. *See also Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U. S. 390 (1940) ("... no plagiarist can excuse the wrong by showing how much of his work he did not pirate."); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) (infringement "cannot be limited literally to the text, else a plagiarist would escape by immaterial variations.").[8]

And, when analyzing garment designs, courts have ruled that small differences in the fabric designs should be disregarded given the equalizing effect of human wear. *See Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1094 (2d Cir. 1974) (finding that "although small differences between the designs might be found to exist under courtroom scrutiny, those differences fade away within a few feet or absent sharp scrutiny"); *Just in Materials Designs, Ltd. v. Arise Textile, Inc.*, 1980 U.S. Dist. WL 1138  (S.D.N.Y. Mar. 13, 1980) (finding that differences identified by defendant between prints used on women's dresses were not likely to attract attention from the average person when examined from four feet away and seen on a female body). For these reasons, Louise Paris' trivial variations to the Subject Design are not sufficient to evade its liability for copying – instead, they establish willfulness on the part of Louise Paris.

Any ordinary reasonable juror would be able to examine the two designs and determine that not only is there substantial similarity between the two, but in fact *striking similarity*. Upon direction by the Court, SFI will also submit to the Court fabric bearing the Subject Design and an

---

[8] *See also Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 619 (7th Cir. 1982) (defendant's "superficial changes . . . may be viewed as an attempt to disguise an intentional appropriation of [Plaintiff's] expression."), *superseded on other grounds.*

exemplar of the garments at issue for review. There is no triable issue of fact as to Counterdefendants' infringement.

      C.    *Louise Paris is Liable for Willful Copyright Infringement*

There is no triable issue of fact as to Louise Paris' willfulness. To prove "willfulness" under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights. *Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005), *citing In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) and *Lipton*, 71 F.3d at 472); *see also Yurman Design*, 262 F.3d at 112 (2d Cir. 2001) ("Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement.") (citation and internal quotation marks omitted).

Louise Paris admitted that it obtained a header of the Subject Design from SFI and then utilized a purchased garment bearing SFI's Subject Design, to create the Accused Design:

> A. [….] And, yes, we did have direct - - a salesman from the Standard Fabric did bring us the header of this particular fabric, but that's not how we - - we didn't use the header. We used it from the actual sample we bought at Wet Seal.
>
> [….]
>
> Q. So Standard Fabrics did bring to your company a header bearing the print design that is now on the garments at issue in this case?
>
> A. Yes.

SUF ¶ 55, Exhs. 9, 11. Louise Paris further acknowledged that it made changes to the design on the Wet Seal garment – SFI's Subject Design – to produce the Accused Design and profited from sales of garments bearing that Accused Design. Id. at ¶ 56, Exhs. 6, 9. This knowing modification of SFI's Subject Design constitutes willful infringement.

The facts here mirror those in *Spectravest, Inc. v. Fleet Street, Ltd.*, 1989 U.S. Dist. WL 135386 (N.D. Cal. Aug. 23, 1989). In *Spectravest*, a designer at a manufacturing company purchased garments bearing two copyrighted designs and modified them before printing them on garments. *Id.* at *1-2. After discovering the infringing garments, the copyright holder brought suit. *Id.* The defendant conceded copyright infringement in the two designs, but disputed willfulness, arguing that because their designer believed the two designs were not owned by any party, the defendant could not be held liable for willfulness. *Id.* at *4-5. The court disagreed, however, and found the defendant liable for willful infringement.[9] *Id.* The court held that, "[to] find [the designer's] actions willful, we need only determine whether she *should have known* that her actions would constitute infringement." *Id.* (emphasis added). Therefore, because she was a designer that "surely would know common industry practice… [the] court thus finds that the infringement was willful." *Id.*[10]

Louise Paris concedes that it deliberately copied the Subject Design  after finding a garment bearing that design at a Wet Seal retail store – this is willful infringement. *See Id.*, at *10-11. Even if Louise Paris were supposedly unaware that the design on the Wet Seal garment was SFI's Subject Design despite having obtained samples and headers of the Subject Design directly from SFI mere months before, Louise Paris (at least) recklessly disregarded the fact that the design it found in the marketplace was subject to copyright protection. *Id.*; *see also*

---

[9] The court first took note that because "copyrighting of designs is common to the sportswear industry," the designer "surely would know common industry practices." *Id.* at *4. The court, however, went on to hold that even in the absence of actual knowledge, all that was needed to determine willfulness was whether the employee *should have known* that her actions constituted infringement. Id. at *4-5.

[10] *See also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1195 (9th Cir. 2001) (finding that substantial evidence supported the jury's finding of willful copyright infringement, including testimonial evidence that defendant "was an experienced businessman who understood the nature of [plaintiff's] copyright infringement claims[...]").

*Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1010 (2d Cir. 1995) ("reckless disregard of the copyright holder's rights [...] suffices to warrant award of the enhanced damages.").

Louise Paris, a sophisticated apparel company with a significant market presence, knew or should have known that textile designs are subject to copyright. This knowledge is further established by the fact that Louise Paris has been sued multiple times by a host of designers for this exact type of copyright infringement. *See, e.g., L A Printex Industries Inc. v. Mangel Stores Corp.,* 2:11-cv-07115-SVW-CW (C.D. CA 2009); *New Look Pty. Ltd. v. Louise Paris Ltd.,* 1:11-cv-00663 (E.D. VA 2011); *New Look Pty. Ltd. v. Louise Paris Ltd.,* 1:11-cv-06433 (S.D.N.Y. 2011); *L A Printex Industries Inc. v. A H Schrieber Co Inc.,* 2:11-cv-07115-SVW-CW (C.D. CA 2011); and *Unicolors Inc v. Louise Paris Ltd.,* 2:14-cv-04474-PA-MAN (C.D. CA 2014).

These prior cases militate in favor of finding Louise Paris willful in its infringement. *See, e.g., The Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.,* 04 Civ. 5002, 2005 WL 2063819, at *3 (S.D.N.Y. Aug. 24, 2005) (prior "lawsuit put [defendant] on clear notice of the risk of infringement involved in his company's practices"); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.,* 517 F.Supp. 900, 903-4 (S.D.N.Y.1981) (where defendant, "through other of his corporations, has been a defendant to copyright infringement suits brought by converters ten times (including this action) in the last five years .... [t]he inference is inescapable that [defendant] has made a practice of copying the designs of other converters, and that an award of statutory damages is appropriate as a deterrent to further activity of this kind"); and *Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.,* 602 F.Supp. 151, 155 (S.D.N.Y.1984) (awarding maximum statutory damages for willful infringement where defendant "and his corporate alter egos have been involved in a number of copyright infringement actions"). Louise Paris' pattern and practice of infringement reveals at the very least a reckless disregard for the intellectual property rights of others, and that copyright lawsuits have been deemed simply a cost of doing business.

Indeed, despite being involved in several copyright infringement lawsuits, Louise Paris admitted that it has no copyright policy at its company. SUF ¶ 57, Exh. 9. Louise Paris does not inquire as to where its designers obtain these preexisting artworks or the provenance of the artworks, and does not require its designers to maintain records concerning the origins of the preexisting designs it modifies or what modifications are made. *Id.* at ¶ 58, Exh. 9. Instead, it employs a standard practice of simply taking preexisting designs from the marketplace and modifying them so that they are thought to be "different enough" to put into production. *Id.* at ¶ 59, Exh. 9. Louise Paris' irresponsible company policies, which were undeniably followed in creating the Accused Design, militate in favor of finding Louise Paris liable for willful infringement.

Instead of having its designers create a new original work, Louise Paris copied the Subject Design. It did so despite the fact that it knew SFI to exclusively own the Subject Design, and knew that such copying constituted infringement. Willful infringement should be found.

## IV.    CONCLUSION

For all of the foregoing reasons, SFI respectfully requests that the Court summarily adjudicate the following issues:

1. SFI owns a valid copyright for the Subject Design;

2. Louise Paris had an opportunity to access the Subject Design;

3. Louise Paris infringed SFI's rights in the Subject Design by copying the Subject Design and selling garments bearing the unauthorized copies of the Subject Design;

4. Rainbow infringed SFI's rights in the Subject Design by selling garments bearing unauthorized copies of the Subject Design;

5. Louise Paris is liable for copyright infringement;

6. Rainbow is liable for copyright infringement; and

7.      Louise Paris is liable for wilfully committing its infringement.


                                    Respectfully submitted,


Date: February 2, 2016          By:     /s/ Michael D. Steger
                                        Michael D. Steger (MS2009)
                                        STEGER KRANE LLP
                                        1601 Broadway, 12th Floor
                                        New York, NY 10019
                                        (212) 736-6800 telephone
                                        (845) 689-2155 facsimile
                                        msteger@skattorney.com

                                        Attorneys for Defendant and Counterclaimant
                                        Standard Fabrics International, Inc.

COUNTERCLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of February, 2016, I served a true and correct copy of Defendant and Counterclaimant Standard Fabrics International, Inc.'s Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment electronically on counsel for Counterdefendants via ECF.

By:    /s/ Michael D. Steger_____
       Michael D. Steger