**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                     :

LOUISE PARIS, LTD. and RAINBOW USA     :     Civil Action No. 15-cv-03250 (PKC)
INC.,                                      :

                     Plaintiffs,       :

                                      :

            - against -         :

                                      :

STANDARD FABRICS INTERNATIONAL,    :
INC.                                      :

                     Defendant.      :

---------------------------------------------------------- x
---------------------------------------------------------- x
                                      :

STANDARD FABRICS INTERNATIONAL,    :
INC.                                      :

                     Counterclaimant,   :

           - against -         :

LOUISE PARIS, LTD. and RAINBOW USA     :
INC.,                                      :

                     Counterdefendants.   :

---------------------------------------------------------- x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

I.      INTRODUCTION ......................................................................1

II.     SUMMARY OF FACTS .............................................................3

        A.      Louise Paris Is a Well-Respected Fashion Company ...............................3

        B.      SFI's Business.................................................................4

        C.      Louise Paris' Creation of the Accused Design .......................................7

III.    LEGAL STANDARD.................................................................8

IV.     SFI IS NOT ENTITLED TO SUMMARY JUDGMENT
        BECAUSE ITS PURPORTED REGISTRATION DOES NOT
        COVER THE SUBJECT DESIGN.................................................9

V.      THERE IS A GENUINE FACTUAL DISPUTE AS TO
        WHETHER THE COPYRIGHTED COLLECTION WAS FIRST
        PUBLISHED AS A SINGLE UNIT ..............................................13

VI.     THERE IS A GENUINE FACTUAL DISPUTE AS TO
        WHETHER THE REGISTRATION IS VALID BECAUSE SFI
        FAILED TO DISCLOSE MULTIPLE PRE-EXISTING WORKS
        TO THE COPYRIGHT OFFICE....................................................15

VII.    THERE ARE GENUINE FACTUAL DISPUTES REGARDING
        ORIGINALITY AND SUBSTANTIAL SIMILARITY ...................................19

VIII.   THERE ARE GENUINE ISSUES OF FACT REGARDING
        WILLFULNESS .........................................................................23

IX.     CONCLUSION...........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Airframe Sys., Inc. v. L-3 Commc'ns Corp.*,
  658 F.3d 100 (1st Cir. 2011) ...................................................19

*Beaudin v. Ben & Jerry's Homemade, Inc.*,
  95 F.3d 1 (2d Cir. 1996)..........................................................23

*Boisson v. Banian, Ltd.*,
  273 F.3d 262 (2d Cir. 2001)...................................................9, 19

*Bridgmon v. Array Sys. Corp.*,
  325 F.3d 572 (5th Cir. 2003) ..................................................19

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
  2010 WL 3718859 (S.D. Cal. Sept. 20, 2010) .........................18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................9

*Ellis v. Jean*,
  2011 WL 636855 (S.D.N.Y. Dec. 16, 2011) .........................20, 22

*Express, LLC v. Forever 21, Inc.*,
  2010 WL 3489308 (C.D. Cal. Sept. 2, 2010) .................... *passim*

*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*,
  896 F. Supp. 2d 223 (S.D.N.Y. 2012)....................10, 16, 17, 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)..............................................................9, 20

*Fincher v. Depository Trust & Clearing Corp.*,
  604 F.3d 712 (2d Cir. 2010).....................................................9

*Folio Impressions, Inc. v. Byer California*,
  937 F.2d 759 (2d Cir. 1991)....................................... *passim*

*Gibson Tex, Inc. v. Sears Roebuck & Co.*,
  11 F. Supp. 2d 439 (S.D.N.Y. 1998)....................................16, 18

*Hamil Am. Inc. v. GFI*,
  193 F.3d 92 (2d Cir. 1999)......................................................10

*Heritage Lace, Inc. v. Fresh Finds, LLC*,
  2012 WL 345904 (S.D.N.Y. Feb. 1, 2012)..........................20, 21, 23

*Hoehling v. Universal City Studios, Inc.*,
  618 F.2d 972 (2d Cir. 1980)...........................................................................23

*Huurman v. Foster*,
  2010 WL 2545865 (S.D.N.Y. June 21, 2010) ...........................................9

*Inst. for Dev. of Earth Awareness v. PETA*,
  768 F. Supp. 2d 672 (S.D.N.Y. 2011) (Castel, J.) ..................................23

*L.A. Printex Indus., Inc. v. Aeropostale*,
  466 Fed. App'x 590 (9th Cir. 2012) ..........................................................14

*Lapham v. Porach*,
  2007 WL 1224924 (S.D.N.Y. Apr. 25, 2007)......................................12, 13

*Laureyssens v. Idea Group, Inc.*,
  964 F.2d 131 (2d Cir. 1992)........................................................................21

*Lipton v. Nature Co.*,
  71 F.3d 464 (2d Cir. 1995)..........................................................................23

*Lumetrics, Inc. v. Bristol Instruments, Inc.*,
  101 F. Supp. 3d 264, 269 (W.D.N.Y. 2015) ............................................18

*Marya v. Warner/Chappell Music, Inc.*,
  --- F. Supp. 3d ---,
  2015 WL 5568497 (C.D. Cal. Sept. 22, 2015) ..........................16, 17, 18

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)..........................................................................9

*McLaren v. Chico's FAS, Inc.*,
  2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010) ............................................14

*Muller v. Twentieth Century Fox Film Corp.*,
  794 F. Supp. 2d 429 (S.D.N.Y. 2011)........................................................20

*New Old Music Grp., Inc. v. Gottwald*,
  --- F. Supp. 3d ---,
  2015 WL 4719864 (S.D.N.Y. Aug. 7, 2015)........................................20, 21

*Olander Enters., Inc. v. Spencer Gifts, LLC*,
  812 F. Supp. 2d 1070 (C.D. Cal. 2011) ..............................................14, 15

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014)........................................................................10

*R.F.M.A.S., Inc. v. Mimi So,*
    619 F. Supp. 2d 39 (S.D.N.Y. 2009)...............................................................*passim*

*Russ Berrie & Co. v. Jerry Elsner Co.,*
    482 F. Supp. 980 (S.D.N.Y. 1980) ..................................................................19

*Senisi v. John Wiley & Sons, Inc.,*
    2015 WL 7736545 (S.D.N.Y. Nov. 30, 2015).................................................14

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,*
    756 F.3d 73 (2d Cir. 2014)................................................................................9

*Tin Pan Apple, Inc. v. Miller Brewing Co., Inc.,*
    1994 WL 62360 (S.D.N.Y. Feb. 24, 1994)......................................................22

*Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of Am.,*
    419 F.3d 181 (2d Cir. 2005)..............................................................................9

*Unistrut Corp. v. Power,*
    280 F.2d 18 (1st Cir. 1960).............................................................................19

*Vargas v. Pfizer, Inc.,*
    418 F. Supp. 2d 369 (S.D.N.Y. 2005).............................................................22

*Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,*
    373 F.3d 241 (2d Cir. 2004)........................................................................8, 20

*Vil v. Poteau,*
    2015 WL 897965 (D. Mass. Mar. 3, 2015)......................................................20

*William S. Geiger Corp. v. Gigi Accessories, Inc.,*
    1997 WL 458668 (S.D.N.Y. Aug. 11, 1997)...............................................21, 22

## STATUTES RULES AND REGULATIONS:

17 U.S.C. § 411(a) .............................................................................................1, 10, 13

37 C.F.R. § 202.1(a)...........................................................................................17, 21, 22

37 C.F.R. § 202.1(b))..............................................................................................21, 22

37 C.F.R. § 202.3(b)(4)................................................................................................13

Fed. R. Civ. P. 56(a) ......................................................................................................8

## OTHER AUTHORITIES:

U.S. Copyright Office, *Compendium II: Compendium of Copyright Office
    Practices* § 503.02(a) (1984) ...................................................................17

U.S. Copyright Office, *Compendium II: Compendium of Copyright Office Practices* § 607.01 (1984)........................................................................................14

U.S. Copyright Office, *Compendium III: Compendium of Copyright Office Practices*, at Glossary pg. 19 (2014)......................................................................14

U.S. Copyright Office, *Compendium III: Compendium of Copyright Office Practices* § 311.2 (2014)...............................................................................16

U.S. Copyright Office, *Compendium III: Compendium of Copyright Office Practices* § 1103 ........................................................................................14

U.S. Copyright Office, *Compendium III: Compendium of Copyright Office Practices* § 1402.3 ......................................................................................14

## I.       INTRODUCTION

No claim for copyright infringement may be maintained unless the work allegedly infringed is registered with the Copyright Office.  17 U.S.C. § 411(a).  This fundamental tenet of copyright law requires the denial of Defendant and Counterclaimant Standard Fabrics International, Inc. ("SFI")'s summary judgment motion.  SFI's own evidence reveals that the copyright registration certificate on which it relies, Reg. No. VA 1-894-565 (the "Registration"), almost certainly does not encompass the fabric design that SFI claims Plaintiffs infringed (the "Subject Design").  If not, this case will have to be dismissed for failure to satisfy the registration requirement.  For purposes of this motion, the evidence at least establishes multiple triable issues of fact that preclude summary judgment.

*First*, the Registration purports to cover a collection of fabric designs entitled "Spring Summer 2014, Collection 1," without ever identifying the designs that make up the collection.  The Registration makes no reference to the Subject Design, and SFI has not come forward with the deposit materials it submitted to the Copyright Office (or any other documents) showing what designs were included in that collection.  The only evidence purporting to connect the Subject Design to the Registration is testimony by SFI's President that is directly contradicted by SFI's own documents.

*Second,* SFI's evidence makes clear that the Registration could not possibly cover the Subject Design.  According to SFI's President, the Subject Design was not published until late August 2013 — ***over a month after the first publication date for the collection of works covered by the Registration***.  SFI's designer also confirms that she did not create the Subject Design until after the copyrighted collection was published.

*Third*, the Registration indicates that the unidentified works within the registered collection were works made for hire (and not subject to any copyright assignment), but the documents reveal that the purported creator of the Subject Design was an independent contractor who assigned the design to SFI.

*Fourth*, there is no indication on the face of the Registration that any of the designs in the collection contain pre-existing material — something a copyright applicant is required to disclose to the Copyright Office, since any such material is not subject to copyright protection — but both SFI's President and designer swore under oath that the Subject Design incorporates design elements from at least three pre-existing designs, one (or all) of which apparently may contain public domain material.

SFI's evidence thus supports one of two findings — either (1) the Subject Design is ***not*** covered by the Registration, or (2) SFI committed fraud on the Copyright Office.  Regardless, the Court must deny SFI's motion, because there is at least an issue of fact as to whether, and to what extent, SFI ever registered a copyright that covers the Subject Design.

Moreover, these are not the only fatal defects in SFI's Registration.  SFI's failure to publish its entire purported collection at the same time renders the collection ineligible for copyright protection as a single work, thereby invalidating the Registration.  Similarly, SFI's failure to disclose the public domain and pre-existing materials upon which the Subject Design is based eliminates any presumption of ownership or originality that might have flowed from the Registration, because SFI deprived the Copyright Office of the ability to consider those materials in deciding whether to register the copyright.  For each of these independently sufficient reasons, summary judgment must be denied.

Finally, material questions of fact remain about whether the protectable elements of the Subject Design, if any, are substantially similar to Plaintiff Louise Paris, Ltd. ("Louise Paris")'s allegedly infringing design (the "Accused Design").  Without any indication that the Subject Design is actually covered by the Registration, or any indication as to which, if any, elements of the Subject Design are actually original, it is impossible to even know what the protectable elements are, which is the first step in any substantial similarity analysis.

SFI's failure to prove what elements of its design are protectable is hardly surprising. The design elements that make up the Subject Design — a zig-zag or "chevron" pattern consisting of simple geometric shapes — are common in the fashion industry, and have been

around for thousands of years.  As a result, if any aspect of the Subject Design is protectable, it is entitled to the thinnest copyright protection, which can be infringed only by exact copying.  But the evidence reveals that the only similarity between the Subject Design and the Accused Design is the common theme or motif of a chevron pattern incorporating everyday geometric shapes. Beyond that, significant artistic differences set the Accused Design apart from the Subject Design, and mandate denial of summary judgment so that the jury may decide the inherently subjective issue of substantial similarity.  For all these reasons, the Court should deny SFI's motion for partial summary judgment.

## II.    SUMMARY OF FACTS

### A.  Louise Paris Is a Well-Respected Fashion Company

Louise Paris is a family-owned and operated, New York City-based apparel company founded in 1978.  Louise Paris' Counterstatement of Material Facts as to Which There Are Genuine Issues to Be Tried ("Counter 56.1") ¶ 60.  As a longstanding and well-established fashion supplier, Louise Paris enjoys an impeccable reputation in the apparel industry.  *Id*. Among Louise Paris' regular customers are such well-known national retailers as Sears, Ross Stores, Aeropostale, and Easy Pickins.  *Id*.

Even in the ever-changing world of fashion, Louise Paris has remained successful throughout nearly 40 years in business, as a result of its continual creation of original fabric designs that meet current fashion trends.  *Id.* ¶ 61.  As is common in the fashion industry, Louise Paris tracks trends by visiting retail locations throughout the U.S. — a practice known in the industry as "shopping the market."  *Id.* ¶ 62.  Although Louise Paris, like all other companies in the fashion industry (including, concededly, SFI) draws inspiration from third-party designs, it has a strict "no copying" policy that it communicates regularly to its designers.  *Id.* ¶¶ 62-63.

As a result of Louise Paris' strict no copying policy, it has rarely had disputes regarding intellectual property in its 40 year history, and has ***never*** been found liable on any claim of infringement.  *Id.* ¶¶ 63-64.  In fact, the only fabric design infringement suits against Louise Paris were brought in the last few years by SFI's counsel and its fabric design clients.  *Id. ¶* 65.

3

**B.  SFI's Business**

SFI appears to have made a business of suing apparel suppliers and retailers for infringement of its fabric designs.  *Id.* ¶ 66.  In the past three years alone, it has commenced thirty lawsuits alleging copyright infringement.  *Id.* ¶ 67.  In this manner, SFI can extract a tidy sum from defendants who would rather settle such a case for a small amount than spend a large amount fighting SFI's claims.

In this case, SFI alleges that Plaintiffs infringed its purported copyright in a fabric design known as Design 7851 (the "Subject Design"), which SFI concedes, and the record demonstrates, was inspired by a progression of pre-existing designs, fashion trends, and design elements that have long been in the public domain.  *See id.* ¶¶ 10, 15-16, 68-69.  According to SFI, the Subject Design was allegedly "created" by adding "pop colors" to an unregistered, pre-existing black and white version of the same design known as Design 7804.  *Id.* ¶ 21; *compare* Zakaria Decl., Ex. 1 at 3, *with* Ex. 2 at 1.  Design 7804, in turn, allegedly incorporated design elements from two earlier designs: Design 6450 and Design 4002.  *See* Counter 56.1 ¶ 15.  Design 4002, for its part, was allegedly based on a design purchased from an Italian company named Bernini Studio S.r.L. in 2011 (the "Bernini Design").  *Id.* ¶ 16.  When Bernini assigned the rights to its design to SFI in 2011, it stated ████████████████████████████ ████████████████████████████████████████████████████████████  *Id.* ¶¶ 16-17, 69. However, neither Bernini nor SFI has ever identified which elements of the Bernini Design (or the Subject Design) are public domain materials.

According to SFI, a designer named Turia Ostling "created" the Subject Design, its black and white predecessor (Design 7804), and Design 6450.  *See Id.* ¶¶ 10, 14; Zakaria Decl., Ex. 2 at 6-12.  Ms. Ostling is not an SFI employee, but an independent contractor who assigned her designs to SFI.  *See* Counter 56.1 ¶ 72.  The progression of pre-existing materials that Ms. Ostling and SFI incorporated into the Subject Design are as follows:



SFI's internal registration form for the Subject Design is dated August 29, 2013.  Counter 56.1 ¶ 75.  According to Jacob Zakaria, SFI's President, "for every artwork that is made by one of [SFI's] designers, they create an internal registration form."  *Id.* ¶ 75; *see also id.* ¶ 76.  An internal registration form must be completed for each design "before [SFI] register[s] it or show[s] it to anybody."  *Id.* ¶ 76; *see also* Declaration of Laura W. Tejeda ("Tejeda Decl."), Ex. A-1 at 88:7-12.  This evidence thus reveals that the Subject Design did not even exist, much less was not shown to anyone before August 29, 2013.  Indeed, Ms. Ostling states that she created the Subject Design "[i]n or around August 2013" (Counter 56.1 ¶ 72), and SFI's Statement of Undisputed Facts concedes that "SFI first sampled and sold fabric bearing the Subject Design to its customers in or around August of 2013" (*Id.* ¶ 24).

Further, SFI never even applied to register a copyright for the Subject Design alone.  Instead, it contends that the Subject Design is covered by the copyright registration for its "Spring Summer 2014, Collection 1."  The evidence, however, indicates otherwise.  The Registration states that SFI published the entire collection on July 25, 2013, ***over a month before Ms. Ostling created the Subject Design***.  *Id.* ¶¶ 72, 78.  Perhaps unsurprisingly, SFI has not

submitted a copy of this allegedly copyrighted collection of designs, or the deposit material submitted to the Copyright Office in connection with its application for the Registration, in connection with this motion.  *Id.* ¶ 81.  Nor has SFI ever produced these materials in discovery, despite numerous requests.  *Id.*  As a result, the Court and Louise Paris are left guessing as to what designs the collection includes.  All we know about the collection is what is stated on the face of the Registration — namely, it (1) is a collection of two-dimensional artwork, (2) was first published in the United States on July 25, 2013, (3) was created as a work for hire by an SFI employee, not an independent contractor who assigned her work to SFI, and (4) was not based on any pre-existing material..  *See* Zakaria Decl., Ex. 1 at 1-2.  These facts are wholly inconsistent with the proposition that the collection included the Subject Design.

The sole evidentiary basis for SFI's dubious assertion that the Registration covers the Subject Design, which was not published until at least a month after the publication date for the copyrighted collection, is Mr. Zakaria's assertion that the Subject Design is part of the collection covered by the Registration.  Counter 56.1 ¶¶ 13, 76-78.  But Mr. Zakaria conceded at his deposition that his belief is simply an "assumption":

> **Q.** Do you recognize this as the copyright registration that SFI claims covers design 7851?  **A.** Yes.
>
> **Q.** What is it about Exhibit 6 [the Registration] that leads you to believe that it covers design 7851?  **A.** Well, you're providing it to me as a part of the documents in this case. And the registration number corresponds with what is on the other documents.
>
> **Q.** When you say the registration number corresponds to the other documents, you mean that the registration number on the Certificate of Registration from the copyright office is the same registration number that is listed on the cease-and-desist letter that your counsel sent to Louise Paris and to Rainbow; is that correct?  **A.** Correct.
>
> **Q.** Is there anything in the Registration that indicates that this covers design 7851?  **A.** The title of the work is Spring Summer 2014 Collection 1. ***I'm assuming that this pattern 7851 is for that collection.***

**Q.** Is this pattern 7851 for that collection?  **A.** Yes.

**Q.** Do you know that?  **A.** *I -- I feel strongly* that that is the case.

**Q.** What is it that makes you feel strongly that that is the case? I know you were sort of hesitant in the answer  **THE WITNESS**: We provided it to you as that.  We're pretty accurate about the information that we provide.

Tejeda Decl., Ex. A-1 at 61:23-63:7 (emphasis added; objections removed).  In other words, other than Mr. Zakaria's "assumption," there is no evidence whatsoever that the Subject Design is part of the "Spring Summer 2014, Collection 1," allegedly first published on July 25, 2013.

### C.    Louise Paris' Creation of the Accused Design

In May 2014, as part of its ongoing efforts to track current fashion trends, Louise Paris purchased a dress from the retailer Wet Seal.  Counter 56.1 ¶ 44; Declaration of Melissa Demelo ("Demelo Decl."), ¶¶ 5-6.  This dress was sold to Wet Seal by Ikeddi Enterprises, Inc. ("Ikeddi"), which had allegedly purchased fabric bearing the Subject Design from SFI.  Counter 56.1 ¶ 44.  Louise Paris' design team then used the pattern on the Wet Seal dress as inspiration in creating its own original design.  *Id.* ¶ 87.  At no point did any Louise Paris designer look at any sample SFI fabric swatches (or "headers") of the Subject Design as inspiration.  *Id.* at ¶¶ 85-86. Louise Paris' original design is depicted below:



Tejeda Decl., Ex. G.

7

Among the many significant differences between the Subject Design and the Accused Design are the following: (1) the Subject Design contains rows of vertical lines consisting of rectangles, while the Accused Design has rows made of arrowheads; (2) the Subject Design's vertical lines are designed to touch the diamond elements above and below them, while the Accused Design's rows of arrowheads are not connected to anything; (3) the Subject Design's diamond elements are composed of thick white lines, while the Accused Design's diamonds are composed of very thin and highly distressed lines; (4) the Subject Design's diamond elements are in a uniform pattern of two rows, with the top row touching the bottom row, while the Accused Design's diamonds elements are arranged haphazardly; (5) the Subject Design contains rows of lightly distressed diamond elements rounded at the corners, while the Accused Design does not contain rounded diamond elements, but rather cloud-like elements with a thick horizontal line through them; and (6) the chevron patterns are different in width, and, accordingly, the number of times they repeat.  Counter 56.1 ¶¶ 89-94.  Overall, the Accused Design has an entirely different look than the Subject Design, the only thing in common being the chevron pattern motif composed of common geometric shapes.  *Id.* ¶ 88.

At the time Louise Paris' designers purchased the Wet Seal dress — and still today — they believed that no one had the right to protect everyday geometric shapes in a common chevron pattern, given the frequent use of such patterns.  *Id.* ¶¶ 70, 71, 88.  Such chevron designs have been used for thousands of years, and are extremely prevalent in the world of fashion.  *Id.* ¶¶ 70-71.  At the same time, adhering to Louise Paris' strict no copying policy, they used the Wet Seal dress only for inspiration, and created their own unique design.  *Id.* ¶ 87.

## III.  LEGAL STANDARD

Summary judgment is appropriate only when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  "The role of a court in ruling on [summary judgment] 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried . . . .'"  *R.F.M.A.S., Inc.*

*v. Mimi So*, 619 F. Supp. 2d 39, 50 (S.D.N.Y. 2009) (citation omitted).  When determining

whether genuine issues of material fact exist, the court must view the facts in the light most

favorable to the non-moving party, and draw all reasonable inferences in its favor.  *See Fincher

v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).  A fact is material

"when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is

'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

"Copyright infringement is established by proving 'ownership of a valid copyright' and

'copying of constituent elements of the work that are original.'"  *Boisson v. Banian, Ltd.*, 273

F.3d 262, 267 (2d Cir. 2001) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

361 (1991)).  In this case, genuine issues of material fact, both with respect to SFI's ownership of

an enforceable copyright in the Subject Design, and its ability to prove copying of protectable

elements of that design, mandate denial of SFI's motion.  In fact, in copyright infringement

actions, "if the court concludes that the movant has failed to establish the existence of a material

factual dispute requiring further proceedings and that the non-moving party is entitled to

judgment as a matter of law" — as is the case here — the court "may grant summary judgment

to the non-moving party *sua sponte*."  *Huurman v. Foster*, 2010 WL 2545865, at *7 (S.D.N.Y.

June 21, 2010) (citing *Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of Am.*,

419 F.3d 181, 190-91 (2d Cir. 2005)).[1]

## IV.   SFI IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS PURPORTED REGISTRATION DOES NOT COVER THE SUBJECT DESIGN

In copyright litigation, ownership of a valid copyright is generally established by a

certificate of registration, which constitutes *prima facie* evidence of the validity of the copyright.

---

[1] *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 80 (2d Cir. 2014) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).  Given SFI's inability to prove that it registered a copyright that covers the Subject Design, which is a prerequisite to suit under the Copyright Act, the Court should enter summary judgment in favor of Plaintiffs.

*Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999).  Here, SFI attempts to prove ownership by submitting the Registration for the "Spring Summer 2014, Collection 1," which, its President claims, includes the Subject Design.  Far from clarifying SFI's ownership of an enforceable copyright, however, the Registration exposes fatal flaws in SFI's copyright claims that make summary judgment impossible, and ultimately may require dismissal of this action.  Critically, SFI cannot demonstrate that the Subject Design is covered by the Registration, and other evidence in the record indicates that the Subject Design, ***which was created more than a month after the collection identified in the Registration was first published***, could not have been covered.  The evidence thus reveals that SFI does not own a registered copyright for the design at issue, or, at the very least, genuine issues of material fact preclude summary judgment on this threshold question.

SFI's copyright claims are based on the assertion that Plaintiffs infringed SFI's purported copyright in a single design — the Subject Design — allegedly contained within a registered collection of designs.  Dkt. No. 7 (SFI's counterclaims).  In order to maintain an action for infringement of its alleged rights in the Subject Design, the Copyright Act requires that SFI first register a copyright in that design.  *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (quoting 17 U.S.C. § 411(a)) ("Under § 411(a) of the [Copyright] Act, 'no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with' the Act."); *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 228 (S.D.N.Y. 2012) (registration requirement applies equally to counterclaims).  But there is no evidence that SFI has ever even applied to register, much less registered a copyright in the Subject Design.  SFI's contention that the Subject Design is covered by the Registration for its "Spring Summer 2014, Collection 1" has multiple problems.

*First*, the Registration for the "Spring Summer 2014, Collection 1" makes no reference to the Subject Design (or any design for that matter).  *See* Zakaria Decl., Ex. 1 at 1-2.  From the face of the Registration, it is literally impossible to tell what specific designs it covers.  *See id.*

*Second,* although SFI has produced a copy of the Subject Design and has submitted it in support of its summary judgment motion, it has ***never*** produced the deposit materials for the actual copyrighted work — the "Spring Summer 2014, Collection 1" — and has submitted no other evidence of the contents of that collection in connection with this motion.  While SFI's President states in his declaration that the Subject Design was part of the collection and was deposited with the Copyright Office (Zakaria Decl., ¶ 4), as he testified at his deposition those are merely his ***assumptions***.  Specifically, Mr. Zakaria testified, he "assum[es] that this pattern 7851 is for that collection" and "feel[s] strongly" that the pattern is "for that collection" (Tejeda Decl., Ex. A-1 at 62:15-25), because he believes that SFI would not be relying on the Registration for that collection if the Subject Design were not part of the registered work.  *See id.* at 62:2-14, 71:13-22.  This is the epitome of circular logic.  If Mr. Zakaria and SFI claim that the Subject Design is part of the copyrighted collection, they are required to prove it.  But, despite this burden and Louise Paris' requests for such documents in discovery, SFI has provided no records — either from the Copyright Office or its own files — to demonstrate that the Subject Design was part of "Spring Summer 2014, Collection 1," or that SFI included the Subject Design in the deposit materials submitted to the Copyright Office together with the application to register that collection.  Counter 56.1 ¶ 81.

*Third*, the sworn testimony of SFI's witnesses and contemporaneously created documents reveal that ***the Subject Design was created after "Spring Summer 2014, Collection 1" was first published***, and therefore could not have been part of the copyrighted collection.  SFI's President testified at deposition that "for every artwork that is made by one of our designers, they create an internal registration form."  Counter 56.1 ¶ 75; *see also* Tejeda Decl., Ex. A-1 at 89:4-16.  According to Mr. Zakaria, this form is created for a design "before we register it or show it to anybody."  Counter 56.1 ¶ 76.  In his declaration in support of this motion, Mr. Zakaria identifies and attaches the internal registration form he claims relates to the Subject Design.  *See* Zakaria Decl. ¶¶ 3, 5 & Ex. 8.  The form is dated August 29, 2013.  *Id.*  By its own admission, SFI therefore cannot have "show[n]" the Subject Design "to anybody" before August 29, 2013.  Mr.

Zakaria's testimony is corroborated by the declaration of Turia Ostling, the designer who, SFI claims, created the Subject Design.  She swears she created the Subject Design "[i]n or around August 2013."  Ostling Decl., ¶ 1.  But the Registration states that "Spring Summer 2014, Collection 1" was first published on July 25, 2013.  Zakaria Decl., Ex. 1 at 1.  It is therefore impossible for the collection to have included the Subject Design, which was created a month later.

*Finally*, other aspects of the Registration confirm that it does not cover the Subject Design.  For example, the Registration states that it is a work made for hire (*see* Zakaria Decl., Ex. 1 at 1), but the Subject Design was allegedly created by Ms. Ostling (Counter 56.1 ¶ 10), ███████████████████████████████████████████████████████████████████ ███████████████████████ (Tejeda Decl., Ex. E), a fact which Mr. Zakaria confirmed at his deposition (Tejeda Decl., Ex. A-1 at 95:7-13 (describing Ms. Ostling as "a 1099 employee"); *id.* at 99:6-16 (stating that Ms. Ostling sells to SFI her intellectual property rights in the designs she creates)).[2] Similarly, the Registration does not list any pre-existing works contained within the collection (*see* Zakaria Decl., Ex. 1 at 1), but there is no dispute that the Subject Design is derivative of several other SFI designs (Zakaria Decl., ¶ 5; Ostling Decl., ¶¶ 1-2), some of which ████████████ ████████████████████████ (*see* Zakaria Decl., Ex. 3 at 2).

This Court considered an analogous situation in *Lapham v. Porach*, 2007 WL 1224924 (S.D.N.Y. Apr. 25, 2007).  In that case, the plaintiff claimed to own the copyright in a work that, according to his copyright application, was created in 2005.  *See id.* at **1, 4.  When plaintiff moved for preliminary injunction, he submitted a sworn affidavit stating that the registered work was a manual he published in 1970, as well as certain other instructional materials.  *Id.* at **1, 4, 6-7.  The court found, however, that it was "impossible" for a work published in 1970 to comprise a registered work that was allegedly created in 2005.  *Id.* at *4.  Moreover, the court

---

[2] In fact, other SFI registrations for works created by Ms. Ostling list her as the author of the work, and indicate that SFI is the copyright claimant by assignment.  Zakaria Decl., Ex. 2 at 6-12.

noted that plaintiff's testimony "may have demonstrated his own commission of fraud on the Copyright Office, which could lead to the invalidation of his copyright registration." *Id.* With respect to the other instructional materials, the court held that, "[b]ecause plaintiff has not submitted the materials actually deposited with the Copyright Office, the court cannot tell whether the other 'instructional materials' referred to in plaintiff's complaint are covered by the 2005 copyright registration." *Id.* at *7. Plaintiff's motion was denied.

Here, as in *Lapham*, it is "impossible" for the registered collection to include the Subject Design in view of the inconsistency in the dates of publication, not to mention that the registered collection, unlike the Subject Design, was a work made for hire that was not based on any pre-existing materials. At best, SFI has failed to demonstrate the absence of a genuine factual dispute about whether the Subject Design is covered by the Registration. More fundamentally, if the Court finds that it is "impossible" for SFI to prove this, then this case should be dismissed, since the asserted copyright is not registered. *See* 17 U.S.C. § 411(a); *Phihoyos*, 748 F.3d at 125.

## V.   THERE IS A GENUINE FACTUAL DISPUTE AS TO WHETHER THE COPYRIGHTED COLLECTION WAS FIRST PUBLISHED AS A SINGLE UNIT

Separate and apart from SFI's failure to establish that the Subject Design is part of "Spring Summer 2014, Collection 1," summary judgment must also be denied because SFI cannot prove that the allegedly copyrighted collection of designs was first published as a single work, which is a strict requirement for a collection copyright. Indeed, the evidence shows that the Subject Design could not have been published until more than a month after the date on which SFI represented to the Copyright Office that it first published "Spring Summer 2014, Collection 1." At the very least, this discrepancy in the timing of the publication presents a material factual issue as to whether SFI owns a valid, enforceable copyright in the Subject Design.

The Copyright Office allows copyright claimants to register a published collection of works "on a single application and upon payment of a single registration fee" only when the contents of the collection are "included in a single unit of publication." 37 C.F.R. § 202.3(b)(4).

Examples of such publications include catalogs and brochures that contain the entire collection. *See, e.g.*, *R.F.M.A.S.*, 619 F. Supp. 2d at 60. The reason for this rule is that "'only those individual works *first published* in the single work will be covered by the single work registration.'" *McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *3 (S.D.N.Y. Nov. 9, 2010) (emphasis in original) (citing an amicus brief from the Copyright Office, and U.S. Copyright Office, *Compendium II: Compendium of Copyright Office Practices* § 607.01 at 600-11 (1984)). Courts have uniformly enforced this rule. *See McLaren*, 2010 WL 4615772, at *3 ("the works must first be published *together* to qualify as" a "single unit of publication") (emphasis added); *see also Senisi v. John Wiley & Sons, Inc.*, 2015 WL 7736545, at *3 (S.D.N.Y. Nov. 30, 2015); *Olander Enters., Inc. v. Spencer Gifts, LLC*, 812 F. Supp. 2d 1070, 1076 (C.D. Cal. 2011).[3]

If the contents of a registered collection "were not published together for the first time as a single unit," then the collection "could not be validly registered as a single work; an incurable defect of their registration." *See Senisi*, 2015 WL 7736545, at *3; *see also McLaren*, 2010 WL 4615772, at *3; *Olander*, 812 F. Supp. 2d at 1077-78. Accordingly, summary judgment is not appropriate when there is a serious question of fact as to whether a collection was first published as a single unit of publication. *See, e.g.*, *R.F.M.A.S.*, 619 F. Supp. 2d at 60; *L.A. Printex Indus., Inc. v. Aeropostale*, 466 Fed. App'x 590 (9th Cir. 2012).

---

[3] The most recent version of the *Compendium* defines the term "unit of publication" as: "[a] registration accommodation by the U.S. Copyright Office for registering multiple works with one application, one filing fee, and one set of deposit copies where the works are *physically bundled together by the claimant for distribution to the public as a single, integrated unit and all the works are first published in that integrated unit.*" U.S. Copyright Office, *Compendium III: Compendium of Copyright Office Practices* at Glossary pg. 19 (2014) (emphasis added); *see also id.* §§ 1103, 1402.3. No evidence suggests that SFI ever did that with its "Spring Summer 2014, Collection 1."



Tejeda Decl., Ex. A-2 at 120:13-120:21 (emphasis added).

The Registration in this case covers a collection that was first published on July 25, 2013. *See* Zakaria Decl., Ex. 1 at 1. But SFI's own evidence reveals that the Subject Design could not have been published "together" with whatever collection was published on July 25, 2013, because the Subject Design was created in August 2013 and was not published until at least August 29, 2013. *See supra* at 5. This discrepancy alone raises at least a factual dispute as to whether the registered collection meets the "single unit of publication" requirement, and, therefore, whether the Registration is valid. *See R.F.M.A.S.*, 619 F. Supp. 2d at 60.

The Central District of California considered similar facts in *Olander Enterprises, Inc. v. Spencer Gifts, LLC*, 812 F. Supp. 2d 1070 (C.D. Cal. 2011), when considering the defendant's motion for summary judgment. The plaintiff there claimed to own four copyright registrations, each protecting a collection of belt buckle designs depicted in a catalog deposited with the Copyright Office. *Id.* at 1072. The defendant moved for summary judgment, asserting that the registrations were invalid because the collections were not first published as a single unit. *See id.* at 1072. The court noted that for each collection, at least one constituent item was first sold or published on a different date from other items in the collection, and/or from the date of first publication listed on the relevant registration. *See id.* Accordingly, the court found that "all four groups of belt buckles were not first published as a single unit of publication," and granted summary judgment for the defendant. *See id.* at 1077-78. Here, as in *Olander*, the Subject Design was first published on a date other than the alleged date of first publication of the copyrighted collection. As a result, SFI has not satisfied the "publication as a single unit" requirement for a valid collection copyright, and Plaintiffs must, at least, be permitted to "rebut at trial the presumption of validity afforded to [SFI] as to whether the Registration is valid as a single work registration," if it has not been rebutted already. *R.F.M.A.S.*, 619 F. Supp. 2d at 60.

## VI. THERE IS A GENUINE FACTUAL DISPUTE AS TO WHETHER THE REGISTRATION IS VALID BECAUSE SFI FAILED TO DISCLOSE MULTIPLE PRE-EXISTING WORKS TO THE COPYRIGHT OFFICE

In addition to all the fatal defects in the Registration, SFI's failure to notify the Copyright Office of the pre-existing works and public domain materials Ms. Ostling incorporated into the

Subject Design constitute an independent defect in the Registration that precludes summary judgment.  Because SFI withheld material information that is required to be disclosed to the Copyright Office during the application process, the presumption of validity ordinarily given to its Registration has been rebutted.  As a result, triable issues remain with respect to the validity of the Registration, and SFI's ability to maintain an infringement claim.

Although a registered copyright is presumed valid, that presumption may be rebutted. *See, e.g.*, *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991).  When the evidence reveals a material error in the registration — intentional or not — it thereby demonstrates that the Copyright Office has not been not able to fully consider the copyright application, and the presumption of validity is rebutted.  *See Marya v. Warner/Chappell Music, Inc.*, --- F. Supp. 3d ---, 2015 WL 5568497, at *5 (C.D. Cal. Sept. 22, 2015) ("when there is a material mistake in the registration, the presumption of validity is rebutted, if not voided altogether" (citing cases)); *accord Family Dollar Stores*, 896 F. Supp. 2d at 233; *Express, LLC v. Forever 21, Inc.*, 2010 WL 3489308, at **5-6 (C.D. Cal. Sept. 2, 2010); *Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F. Supp. 2d 439, 442 (S.D.N.Y. 1998).

The Copyright Office requires applicants to identify pre-existing materials that form the basis of, or are incorporated into, any work they seek to register, because a registration cannot cover pre-existing material, only new and original work.  *See, e.g.*, U.S. Copyright Office, *Compendium III: Compendium of Copyright Office Practices* § 311.2 (2014) ("a registration for a derivative work does not cover any previously published material, previously registered material, or public domain material that appears in the derivative work").  Among other things, this requirement protects against the issuance of registrations that purport to claim exclusive rights in public domain materials.  For this reason, courts have recognized that it is a material error for a copyright applicant to fail to disclose that the applied-for work was based on pre-existing materials, thereby rebutting the presumption.  *See, e.g.*, *Gibson*, 11 F. Supp. 2d at 442 ("the failure to alert the Copyright Office to relationships between the work for which registration is sought and prior works of others endangers the presumption of validity"); *Express*,

2010 WL 3489308, at *6 (finding the presumption rebutted where "Express failed to disclose in its copyright applications that the Plaids were based on pre-existing designs"); *accord. Folio Impressions*, 937 F.2d at 763-64.

Once the presumption has been rebutted, the alleged copyright owner bears the burden of proving the copyright's validity. *See, e.g.*, *Marya*, --- F. Supp. 3d ---, 2015 WL 5568497, at *7. If the copyright owner presents no evidence of validity other than the registration itself, or if there is a factual dispute about the copyright's validity, summary judgment must be denied. *See, e.g.*, *id.* at **7-8; *Family Dollar Stores*, 896 F. Supp. 2d at 233, 236; *Express*, 2010 WL 3489308, at **6, 9; *R.F.M.A.S.*, 619 F. Supp. 2d at 60.  In fact, courts have granted summary judgment *against* copyright claimants on these grounds. *See, e.g.*, *Marya*, --- F. Supp. 3d ---, 2015 WL 5568497, at *20; *Family Dollar Stores*, 896 F. Supp. 2d at 236; *Express*, 2010 WL 3489308, at *9.

The Registration at issue in this case does not disclose that the copyrighted work is based on public domain and pre-existing works. *See* Zakaria Decl., Ex. 1.  Nonetheless, SFI has submitted declarations from its President and the purported creator of the Subject Design, both swearing that the Subject Design is based on multiple pre-existing designs (*see* Zakaria Decl., ¶ 5; Ostling Decl., ¶¶ 1-2),[4] and conceding that it █████████████████████████ ████████  *See* Zakaria Decl., ¶ 5 & Ex. 3 at 2.  The failure to identify these public domain and pre-existing materials to the Copyright Office is fatal to SFI's claim of presumptive validity, and, potentially, to its entire case.

---

[4] Design 7804, which SFI claims is part of the inspiration for the Subject Design, is apparently identical to the Subject Design except for a change in coloring. *Compare* Zakaria Decl., Ex. 2 at 1 (Design 7804, which is black and white), *with* Zakaria Decl., Ex. 1 at 3 (Subject Design, which is Design 7804 with added "pop colors," as Ms. Ostling explained at Ostling Decl., ¶ 1).  As the Copyright Office has recognized, however, "mere coloration cannot support a copyright . . . .  For example, it is not possible to copyright a new version of a textile design merely because the colors of red and blue appearing in the design have been replaced by green and yellow, respectively." *Compendium II* § 503.02(a); *see also* 37 C.F.R. § 202.1(a) ("examples of works not subject to copyright [include] . . . mere variations of . . . coloring"); *Express*, 2010 WL 3489308, at *6.

The Central District of California considered similar facts in *Express, LLC v. Forever 21, Inc.*, 2010 WL 3489308 (C.D. Cal. Sept. 2, 2010).  There, the plaintiff claimed that the defendants were manufacturing and selling clothing that infringed plaintiff's registered copyrights in four plaid designs.  *Id.* at *1.  Discovery revealed that the registered designs were based on pre-existing and public domain designs, and that the plaintiff failed to disclose these designs to the Copyright Office.  *Id.* at **3, 5.  As a result, the court refused to "give presumptive effect to a copyright registration that contradicts the sworn testimony of the purported creator of the copyrighted work."  *Id.* at *6.  It found that, to the extent the presumption even applied, it had been rebutted.  *Id.* at **6-7 (citing *Folio*, 937 F.2d at 763-64 and *Gibson*, 11 F. Supp. 2d at 442).  The court therefore denied the plaintiff's motion for summary judgment and simultaneously granted defendants' motions.  *See id.* at **6-7, 9.

Here, as in *Express*, sworn testimony and documentary exhibits reveal that the Subject Design is based on multiple pre-existing designs — including designs in the public domain — none of which SFI disclosed to the Copyright Office.  As a result, the presumption of validity has been rebutted, or at the very least, an issue of material fact exists as to whether the registration is valid, and summary judgment must be denied.  *See, e.g.*, *Marya*, --- F. Supp. 3d ---, 2015 WL 5568497, at **7-8; *Family Dollar Stores*, 896 F. Supp. 2d at 233, 236; *Express*, 2010 WL 3489308, at **6, 9; *R.F.M.A.S.*, 619 F. Supp. 2d at 60.[5]

---

[5] Rebutting the presumption of validity by showing a material mistake in the application process (*i.e.*, the failure to disclose pre-existing material) does not require proof of fraud by SFI.  *See, e.g.*, *Marya*, --- F. Supp. 3d ---, 2015 WL 5568497, at *6; *Family Dollar Stores*, 896 F. Supp. 2d at 231, 233.  Nevertheless, a factual dispute also exists as to whether SFI deliberately failed to disclose material facts to the Copyright Office, which not only rebuts the presumption, but is grounds to invalidate a registration.  *See Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980).  As discussed above, the Registration contains numerous inaccuracies, including: (1) the date of first publication of the Subject Design; (2) whether the collection for which protection was sought was first published as a single work; (3) whether the collection was a work made for hire; and (4) whether designs in the collection were based on pre-existing works.  Considering these numerous inaccuracies, a jury could reasonably infer fraudulent intent on behalf of SFI.  *See, e.g.*, *Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp. 3d 264, 269 (W.D.N.Y. 2015) ("[s]ince direct evidence of deceptive intent is rarely available, subjective intent to deceive can be inferred from indirect and circumstantial evidence").  Viewing the evidence in the light most favorable to the non-moving party, there is at least a genuine factual dispute as to SFI's fraudulent intent in failing to disclose material facts to the Copyright Office.  *See, e.g.*, *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2010 WL 3718859, at *3 (S.D. Cal. Sept. 20, 2010).

## VII.   THERE ARE GENUINE FACTUAL DISPUTES REGARDING ORIGINALITY AND SUBSTANTIAL SIMILARITY

Defects in SFI's copyright registration are hardly the only obstacles to summary judgment.  SFI has also failed to prove "copying of constituent elements of the [Subject Design] that are original." *Boisson*, 273 F.3d at 267.  Specifically, triable issues of fact remain with respect to: (1) what design is covered by SFI's copyright registration; (2) what elements of the Subject Design, if any, are original and not based on pre-existing materials; (3) what elements of the Subject Design are unprotectable or based on material in the public domain; and (4) whether Louise Paris' Accused Design is substantially similar to protectable aspects of SFI's Subject Design.  Each requires denial of this motion.

Most fundamentally, SFI's failure to demonstrate that the Subject Design is covered by the Registration makes it impossible for the Court to determine whether Louise Paris has copied any protected design.  In simple terms, the Court has no evidence of what the protected design is — and plenty of evidence that the Subject Design is not protected — and therefore cannot assess any claim of illicit copying.  In similar circumstances, where courts cannot tell if an allegedly infringed work is registered, much less determine the scope of the copyright claimant's rights in the work, they have routinely granted summary judgment *in favor of the alleged infringers*.

For example, in *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100 (1st Cir. 2011), the First Circuit affirmed the grant of summary judgment in favor of alleged infringers of source code, because the copyright owner had "presented no evidence sufficient to prove the content of its registered source code versions." *Id.* at 107.  On that incomplete record, the Court found that "Airframe [could not] show that any of its registered works is substantially similar to the allegedly infringing M3 program." *Id.* (citing *Unistrut Corp. v. Power*, 280 F.2d 18 (1st Cir. 1960), and *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572 (5th Cir. 2003)).

Here, as in *Airframe*, the contents of the registered work on which SFI relies are unknown, because SFI has never revealed them in discovery or placed them in the record.  The District of Massachusetts succinctly summarized the consequences of such a failure of proof when it granted summary judgment for an alleged infringer in a similar case: "Despite extensive

19

discovery in this case, [the copyright owner] has failed to produce his allegedly infringed work. . . . [W]ithout production of the allegedly infringed material, the Court cannot determine that a sufficient degree of similarity exists . . . ." *Vil v. Poteau*, 2015 WL 897965, at *4 (D. Mass. Mar. 3, 2015). For the same reason, SFI's failure to demonstrate that the Subject Design is covered by the Registration entitles Plaintiffs to summary judgment, but at the very least, SFI has failed to meet its burden to show that no factual dispute exists as to the contents of the registered work, requiring the denial of its motion. *See Vt. Teddy Bear*, 373 F.3d at 244.

SFI's failure to disclose the public domain and pre-existing materials upon which the Subject Design is based is also fatal to the substantial similarity analysis. A party alleging copyright infringement must demonstrate substantial similarity between the accused work and ***the protectable elements of the allegedly infringed work***. *Feist*, 499 U.S. at 361; *see New Old Music Grp., Inc. v. Gottwald*, --- F. Supp. 3d ---, 2015 WL 4719864, at *3 (S.D.N.Y. Aug. 7, 2015); *Heritage Lace, Inc.v. Fresh Finds, LLC*, 2012 WL 345904, at *4 (S.D.N.Y. Feb. 1, 2012). "'When similar works resemble each other only in unprotected aspects . . . defendant prevails.'" *New Old Music Grp.*, --- F. Supp. 3d ---, 2015 WL 4719864, at **10-11 (quoting *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 447 (S.D.N.Y. 2011)).

Here, this Court cannot determine what the protectable elements of the Subject Design are because SFI failed to disclose what public domain or other unprotectable materials were incorporated into the Subject Design. As a result, "the Court cannot distinguish the relevant protectable portions of [SFI's] work from the portions that incorporate elements from the public domain or from prior copyrighted works and may thus be non-protectable." *Ellis v. Jean*, 2011 WL 636855, at *6 (S.D.N.Y. Dec. 16, 2011). In other words, this Court cannot tell what aspects of the Subject Design are original, and a substantial similarity analysis is therefore impossible.

Moreover, because SFI claims that the Subject Design incorporates both protectable (*i.e.*, original) and unprotectable (*i.e.*, derivative and public domain) elements, the court must apply the "more discerning ordinary observer" test to determine whether Louis Paris' Accused Design is sufficiently similar to support a finding of infringement. *See Folio*, 937 F.2d at 765. SFI

argues that the Court should apply the "ordinary observer" test, but that standard applies only where a plaintiff's work is wholly original (*see id.* at 765-66), which is not the case here.

Under the "more discerning ordinary observer" test, the factfinder must "ignor[e] those aspects of a work that are unprotectible in making the comparison" of two works for purposes of determining substantial similarity. *Heritage Lace*, 2012 WL 345904, at *4 (quoting *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 141 (2d Cir. 1992)); *see also New Old Music Grp.*, --- F. Supp. 3d ----, 2015 WL 4719864, at *11 ("When the work in question contains nonprotectible elements, the Court must 'attempt to extract the unprotectible elements from . . . consideration and ask whether the *protectable elements, standing alone*, are substantially similar." (citation omitted; emphasis in original)).  As discussed above, here this sort of extraction of unprotectable elements is impossible here, because SFI has failed to (1) provide this Court with evidence that the Subject Design is covered by the Registration, and (2) reveal the pre-existing and public domain designs upon which it based the Subject Design to the Copyright Office.

The problem is only exacerbated by the design elements that make up the Subject Design. The case law is clear that unprotectable elements include "common geometrical shape[s]" (*William S. Geiger Corp. v. Gigi Accessories, Inc.*, 1997 WL 458668, at *2 (S.D.N.Y. Aug. 11, 1997)), "familiar symbols or designs" (37 C.F.R. § 202.1(a)), "mere variations of . . . coloring" (*id.*), and "[i]deas …as distinguished from the particular manner in which they are expressed" (37 C.F.R. § 202.1(b)).  A repeating zig-zag pattern incorporating common geometric shapes is a classic example of a design incorporating multiple unprotectable elements that are either unoriginal, or plainly in the public domain.  *See* Counter 56.1 ¶¶ 70, 71, 88.

On the record before this Court, there are significant factual questions about whether the Subject Design contains any protectable elements.  Specifically:

1. SFI concedes that the Subject Design is derivative of several other designs (Zakaria Decl., ¶ 5; Ostling Decl., ¶¶ 1-2), and may further ███████████ ███████████████████████████ (*see* Zakaria Decl., Ex. 3 at 2).  Since SFI has produced no evidence as to what those pre-existing and public domain elements are, however, there is "no proof whatsoever that [SFI] made any particular

changes to the source material, let alone changes that are sufficiently creative to warrant copyright protection." *Express*, 2010 WL 3489308, at *5;

2.   The Subject Design is composed entirely of common geometric shapes and familiar designs such as lines, squares, diamonds, and zig-zag (*i.e.*, chevron) designs (*see* Zakaria Decl., Ex. 1), none of which are protectable by copyright. *See William S. Geiger Corp.*, 1997 WL 458668, at *2 ("common geometrical shape[s]" are not protectable); 37 C.F.R. § 202.1(a) ("familiar symbols or designs" are not protectable); *id.* § 202.1(b) ("[i]deas" are not protectable); and

3.   Designs similar to the Subject Design and its individual elements have long been in use in the fashion industry. *See* Counter 56.1 ¶¶ 70, 71, 88.

Because SFI has not identified which portions of the Subject Design have been adopted from public domain or pre-existing materials, "the Court cannot distinguish the relevant protectable portions of [SFI's] work from the portions that incorporate elements from the public domain or from prior copyrighted works and may thus be non-protectable." *See Ellis*, 2011 WL 636855, at *6.  At the very least, there is a triable issue of fact about what elements of the Subject Design, if any, are protectable, and summary judgment must therefore be denied. *See Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 372 (S.D.N.Y. 2005) (quoting *Tin Pan Apple, Inc. v. Miller Brewing Co., Inc.*, 1994 WL 62360, at *4 (S.D.N.Y. Feb. 24, 1994)) ("[t]ypically, '[w]hen the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve.'"); *accord Ellis*, 2011 WL 636855, at *6.

Finally, genuine factual issues preclude summary judgment on the question whether the Accused Design is substantially similar to the protectable elements of the Subject Design (if any).  Numerous artistic differences between the Subject Design and the Accused Design require this question to be decided by the jury. *See supra* at 8.

Because the Subject Design is composed of an arrangement of unprotectable elements, the scope of copyright protection, if any, is extremely thin. *See Folio*, 937 F.2d at 765 (finding "narrow" copyright protection for a fabric design consisting of an arrangement of rose images over a public domain background, because "the copyright umbrella does not cover the idea of arranging roses generally in a straight line pattern"); *R.F.M.A.S.*, 619 F. Supp. 2d at 64 ("When copyright protection 'is limited to the particular selection or arrangement' of common elements

from the public domain . . . 'the protection given [the holder] is thin'" (citations omitted)). "Where[, as here,] the quantum of originality is slight and the resulting copyright is 'thin,' infringement will be established only by very close copying because the majority of the work is unprotectable." *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996).  Under these circumstances, the artistic differences outlined above create a triable issue of fact as to whether a "more discerning" observer would find the protectable elements of the Subject Design, if any, to be substantially similar to the Accused Design.  *See, e.g.*, *R.F.M.A.S.*, 619 F. Supp. 2d at 64; *Heritage Lace, Inc*, 2012 WL 345904, at *4.  On records such as this, "[t]his Court has not hesitated to deny summary judgment on the issue of substantial similarity."  *Inst. for Dev. of Earth Awareness v. PETA*, 768 F. Supp. 2d 672, 677 (S.D.N.Y. 2011) (Castel, J.); *see also R.F.M.A.S.*, 619 F. Supp. 2d at 64 (quoting *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980)) ("'[b]ecause substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation.'").

## VIII.   THERE ARE GENUINE ISSUES OF FACT REGARDING WILLFULNESS

Even if the Court could find infringement, genuine issues of fact preclude summary judgment on the question of willfulness.  "[A] defendant's copyright infringement will be found willful pursuant to § 504(c)(2) where the defendant had knowledge that its conduct constituted infringement or showed reckless disregard for the copyright holder's rights."  *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995).  Because a determination of willfulness often turns on issues of mental state and the credibility of witnesses, "courts are generally reluctant to dispose of [such] case[s] on summary judgment."  *See id.*  A copyright defendant's statement that he believed he was copying unprotectable material generally creates a triable issue of fact, because a credibility determination as to the truthfulness of such an assertion is typically "within the province of the jury and may not be resolved on summary judgment."  *See id.* (reversing a summary judgment on willfulness where defendant argued that he "innocently copied from the scarf what he believed to be an unprotectable compilation").

Much of SFI's argument on willfulness focuses on Louise Paris' supposed access to: (1) a fabric sample ("header") bearing the Subject Design that SFI claims it gave Louise Paris, and (2) a dress Louise Paris bought from the retailer Wet Seal.  *See* Mot. at 14-17.  This argument is simply wrong.  First, no Louise Paris designer ever saw a "header" of the Subject Design.  Counter 56.1 ¶ 85.[6]  Second, to the extent Louise Paris was inspired by the Wet Seal dress in creating the Accused Design, that is all it was — inspiration.  All Louise Paris did with the Wet Seal garment is what it and everyone in the apparel industry does, ***including SFI*** — it "shopped the market" to see what the latest trends were.  *See id.* ¶¶ 62, 87; Tejeda Decl., Ex. A-1 at 49:1-7 (As SFI's President testified, "I am regularly in all the major retailers, every weekend, sometimes during the week in search for trends to see what is selling, what is not selling, what is hot.").  The only competent evidence on willfulness is that Louise Paris believed the Wet Seal garment was an unprotectable combination of common design elements in an unprotectable arrangement, which its designers used only as inspiration for the Accused Design.  Counter 56.1 ¶ 88.  This does not establish willfulness.

SFI also bases its willfulness claims on misrepresentations about prior lawsuits against Louise Paris.  SFI cites five cases in which Louise Paris was sued for copyright infringement, but fails to mention that ***Louise Paris was not found liable in any of these cases***.  Three cases were brought by parties represented by SFI's counsel, all of which were dismissed or settled without consideration of the merits.  *Id.* ¶ 64. The other two cases ended favorably for Louise Paris.  *Id.* In 40 years, Louise Paris was never sued for copyright infringement before being inundated by claims brought by SFI's counsel's clients.  *Id.* ¶ 65

Finally, SFI alleges that Louise Paris has no "copyright policy," and "employs a standard practice of simply taking preexisting designs from the marketplace and modifying them so that

---

[6] Mr. Barnathan's testimony that Louise Paris received such a header from SFI was the result of his confusion of the Subject Design with other "headers" SFI provided to Louise Paris.  He has also made clear that his references to "changes" were to the many artistic differences between the Accused Design and the Subject Design.  Declaration of Joseph Barnathan, ¶¶ 4, 7.

they are thought to be 'different enough' to put into production."  Mot. at 17.  That too is completely false.  In fact, Louise Paris has a strict "no copying" policy, which is regularly communicated to its designers.  Counter 56.1 ¶ 63.  Drawing inspiration from historical and current fashion trends is not "copying"; rather, it is what the fast-moving fashion industry is all about.  *Id.* ¶ 62; *see also* Demelo Decl., ¶¶ 4-5.  Indeed, it is this ability to stay up with the trends — not copying the designs of others — that has made Louise Paris the successful company that it is.  Counter 56.1 ¶ 61.  Accordingly, there is an issue of fact on willfulness.

**IX.   CONCLUSION**

For the foregoing reasons, the Court should deny SFI's motion for summary judgment.

Dated: February 23, 2016                          **ARNOLD & PORTER LLP**

                                                  */s/ Louis S. Ederer*
                                                  Louis S. Ederer
                                                  Matthew T. Salzmann
                                                  Laura W. Tejeda
                                                  Maxwell C. Preston
                                                  399 Park Avenue
                                                  New York, NY 10022-4690
                                                  Telephone:  (212) 715-1000
                                                  Facsimile:  (212) 715-1399
                                                  louis.ederer@aporter.com
                                                  matthew.salzmann@aporter.com
                                                  laura.tejeda@aporter.com
                                                  maxwell.preston@aporter.com
                                                  *Attorneys for Plaintiffs-Counterdefendants*
                                                  *Louise Paris, Ltd. and Rainbow USA Inc.*

## **CERTIFICATE OF SERVICE**

I, hereby certify that on February 23, 2016, copies of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment, and all supporting documents, were caused to be served upon the following via ECF and, in the case of documents filed under seal or in redacted form, via email:

Scott Burroughs, Esq.
Trevor W. Barrett, Esq.
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
scott@donigerlawfirm.com
tbarrett@donigerlawfirm.com

Michael Steger, Esq.
Steger Krane LLP
1601 Broadway, 12th Floor
New York, NY 10019
msteger@skattorney.com

_____/s/ Laura W. Tejeda_____
Laura W. Tejeda