EXHIBIT 16

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF NEW YORK

 3

 4

 5    LOUISE PARIS, LTD., and RAINBOW )
      USA, INC.,                      )
 6                                    )
                  Plaintiffs,         )
 7                                    ) Civil Action
          vs.                         ) Case No.
 8                                    ) 15-cv-03250(PKC)
      STANDARD FABRICS INTERNATIONAL, )
 9    INC.,                           )
                                      )
10                Defendants.         )
      _____)
11    STANDARD FABRICS INTERNATIONAL, )
      INC.,                           )
12                                    )
              Counter-Claimants,      )
13                                    )
          vs.                         )
14                                    )
      LOUISE PARIS, LTD. and RAINBOW  )
15    USA, INC.,                      )
                                      )
16            Counter-Defendants.     )
      _____)
17

18            - NON-CONFIDENTIAL PORTION -

19

20         30(b)(6) DEPOSITION OF JACOB ZAKARIA

21               Los Angeles, California

22              Monday, November 2, 2015

23

24    Reported by:  Judith Schlussel
                    CSR No. 4307
25    NDS Job No.:  176417
```

                                                                     1

```
 1                    UNITED STATES DISTRICT COURT

 2                   SOUTHERN DISTRICT OF NEW YORK

 3

 4

 5    LOUISE PARIS, LTD., and RAINBOW )
      USA, INC.,                       )
 6                                     )
                      Plaintiffs,      )
 7                                     ) Civil Action
          vs.                          ) Case No.
 8                                     ) 15-cv-03250(PKC)
      STANDARD FABRICS INTERNATIONAL, )
 9    INC.,                            )
                                       )
10                    Defendants.      )
      _____)
11    STANDARD FABRICS INTERNATIONAL, )
      INC.,                            )
12                                     )
                Counter-Claimants,     )
13                                     )
          vs.                          )
14                                     )
      LOUISE PARIS, LTD. and RAINBOW   )
15    USA, INC.,                       )
                                       )
16              Counter-Defendants.    )
      _____)
17

18

19

20         30(b)(6) DEPOSITION OF JACOB ZAKARIA,

21     taken at 777 South Figueroa Street, Suite 4400,

22     Los Angeles, California 90017, commencing at

23     10:40 a.m., on Monday, November 2, 2015, before

24     Judith Schlussel, CSR No. 4307.

25
```

2

```
 1              MR. BARRETT:  Yes.  And the label.  And the
 2   tag.
 3              MR. ULIN:  We can look at that when we're off
 4   the record.  I want to keep going on the examination.
 5   If I'm mistaken about it, then we'll come back and ask
 6   you about those.  If I'm not, then that's something we
 7   need to follow up on.
 8         Q.   BY MR. ULIN:  With respect to design 7851, is
 9   that a fabric design that Standard Fabrics designed
10   itself or one that you purchased from a design house?
11         A.   We designed it ourselves.
12         Q.   Who designed it?
13         A.   I believe this was designed by Turia.
14         Q.   And when did she design it?
15         A.   I don't know off the top of my head.
16              MR. ULIN:  Let's mark Exhibit 6.  I'll come
17   back to some of those questions about the design.
18              (Deposition Exhibit No. 6 was marked for
19   identification.)
20         Q.   BY MR. ULIN:  Mr. Zakaria, have you seen
21   Exhibit 6 before?
22         A.   Yes.
23         Q.   Do you recognize this as the copyright
24   registration that Standard Fabrics claims covers design
25   7851?
```

61

```
 1        A.    Yes.
 2        Q.    What is it about Exhibit 6 that leads you to
 3   believe that it covers design 7851?
 4        A.    Well, you're providing it to me as a part of
 5   the documents in this case.  And the registration number
 6   corresponds with what is on the other documents.
 7        Q.    When you say the registration number
 8   corresponds to the other documents, you mean that the
 9   registration number on the Certificate of Registration
10   from the copyright office is the same registration
11   number that is listed on the cease-and-desist letter
12   that your counsel sent to Louise Paris and to Rainbow;
13   is that correct?
14        A.    Correct.
15        Q.    Is there anything in the registration
16   certificate that indicates that this covers design 7851?
17              MR. BARRETT:  I'll object as vague.
18        Q.    BY MR. ULIN:  You may answer.
19        A.    The title of the work is Spring Summer 2014
20   Collection 1.  I'm assuming that this pattern 7851 is
21   for that collection.
22        Q.    Is this pattern 7851 for that collection?
23        A.    Yes.
24        Q.    Do you know that?
25        A.    I -- I feel strongly that that is the case.
```

                                                                62

```
 1        Q.   What is it that makes you feel strongly that
 2   that is the case?  I know you were sort of hesitant in
 3   the answer.
 4             MR. BARRETT:  Same objection.
 5             THE WITNESS:  We provided it to you as that.
 6   We're pretty accurate about the information that we
 7   provide.
 8        Q.   BY MR. ULIN:  Are you the person at Louise
 9   Paris who is responsible for --
10        A.   I don't work at Louise Paris.
11        Q.   Thank you.  I misspoke.  Are you the person at
12   Standard Fabrics who oversees copyright registrations?
13        A.   No, I'm not.
14        Q.   Who is?
15        A.   I oversee the person that does it.
16        Q.   Who is the person that does it?
17        A.   Cindy, who also handles, works in our Encad
18   department.
19        Q.   What is her last name?
20        A.   I can't -- let me tell you exactly right now.
21             MR. BARRETT:  If you can make a best guess at
22   it, then --
23             THE WITNESS:  I'm drawing a blank right now.
24   I'm sorry.  There are a couple of Cindys.
25        Q.   BY MR. ULIN:  But you are the person who
```

63

```
 1    certified the application for the copyright
 2    registration, correct?
 3         A.   Yes.  I overlook what Cindy does.
 4         Q.   Do you know whether anything was submitted to
 5    the copyright office that would indicate that design
 6    7851 was covered, or intended to be covered by this
 7    copyright?
 8              MR. BARRETT:  Objection; vague and ambiguous.
 9    It's unclear as asked and seeks a legal conclusion.
10         Q.   BY MR. ULIN:  You may answer.
11         A.   Yes.  I would assume so, because we provide an
12    image of the artwork along with the collection.
13         Q.   Do you know whether an image of 7851 was
14    submitted to the copyright office --
15         A.   Yes.
16         Q.   -- in connection with the application for --
17         A.   Yes.
18         Q.   I need to finish my question.  Do you know
19    whether a copy of an image of design 7851 was submitted
20    to the copyright office in connection with the
21    application for the copyright that is reflected in
22    Exhibit 6?
23         A.   Yes.
24         Q.   How do you know that?
25         A.   That is a perfunctionary [sic] measure.  We do
```

1   that on all of them, all of our copyrights.

2       Q.   You keep records of the materials that you

3   submitted to the copyright office in connection with the

4   applications?

5            MR. BARRETT:  Same objections.

6            THE WITNESS:  I believe that they are done

7   electronically.  So there is a record.

8       Q.   BY MR. ULIN:  Okay.  Is there a record in --

9   well, so I believe the answer to my next question is

10  yes.  Let me just back up.

11           Was the record of what was submitted in

12  connection with the application for the copyright that

13  is in Exhibit 6 produced in response to our request for

14  documents in this case?

15           MR. BARRETT:  Same objections.  For

16  clarification, the copyright registration certificate.

17      Q.   BY MR. ULIN:  You may answer.

18      A.   I don't know, but I would imagine so.

19           MR. ULIN:  Mark Exhibit 7.

20           (Deposition Exhibit No. 7 was marked for

21  identification.)

22      Q.   BY MR. ULIN:  Have you seen Exhibit 7 before,

23  Mr. Zakaria?

24      A.   I believe so.

25      Q.   And do you recognize this as the Certificate of

65

```
 1        Q.    Why do you say that they're different types of
 2   documents?
 3        A.    Because they are.
 4        Q.    What makes you say that?
 5        A.    Well, for one, they look different to me.
 6   That's all.
 7        Q.    Because the title is the only thing appearing
 8   on the first page on Exhibit 7 and the title doesn't
 9   take up much space and there is other information
10   appearing on the first page of Exhibit 6.  Is that what
11   makes them look different?
12              MR. BARRETT:  I'll object, misstates prior
13   testimony.
14              THE WITNESS:  I don't know.  I'm going to take
15   a wild guess for you right now, pretty good guesses
16   though.  I think one of them was done electronically and
17   one of them was done by mail.  And they're different
18   requirements.
19        Q.    BY MR. ULIN:  Which one was done electronically
20   and which was done by mail?
21        A.    So I believe that the copyright office, U.S.
22   copyright office post 2011, they made a requirement that
23   copyrighting be done online exclusively.
24        Q.    When Standard Fabrics applied for the copyright
25   reflected in Exhibit 6, the one ending in 565 --
```

                                                                    69

```
 1        A.   Uh-huh.
 2        Q.   -- did you submit a list to the Copyright
 3   Office of all of the designs that were in the spring
 4   summer collection that was to be copyrighted?
 5        A.   I would imagine so.
 6        Q.   Did you submit images of all of those
 7   copyrighted designs?
 8        A.   I would imagine so.
 9        Q.   And those -- you say you imagine so.  Do you
10   know so?
11        A.   As a matter of protocol, that's how we
12   copyright all of our artwork.  So based on that, I would
13   say strongly that yes, that's the case.
14        Q.   And you -- I believe you testified earlier that
15   your understanding is there should be a record of what
16   was submitted to the copyright office in connection with
17   the application for the copyright and registration shown
18   in Exhibit 6 in your files at Standard Fabrics?
19        A.   Yes.  I would imagine that's the case, yes.
20        Q.   That should include a listing of all of the
21   designs that were subject to the collection copyright,
22   correct?
23        A.   I think I mentioned that we do these online, so
24   there has got to be some sort of a trail, you know,
25   showing those specifications as you just mentioned.
```

70

```
 1        Q.    Okay.  And if those -- if that trail as you put
 2   it, the list of designs and examples of the designs that
 3   were submitted to the copyright office was not produced
 4   in this litigation, does that suggest that it's not part
 5   of your records?
 6             MR. BARRETT:   Objection.  Same objections.
 7             THE WITNESS:   I don't know.
 8        Q.    BY MR. ULIN:  I'll represent to you that it's
 9   not in the materials that was produced to our office.
10   Can you explain that?
11             MR. BARRETT:   Same objections.
12             THE WITNESS:   I cannot explain it.
13        Q.    BY MR. ULIN:  At the risk of asking a question
14   which I may have asked before, how do you know 7851 is
15   actually covered by registration 894-565 that is
16   reflected in Exhibit 6?
17        A.    Because that's what we provided to you.
18        Q.    Did you refer to something in your files that
19   allows you to make that conclusion?
20        A.    Yes.  I imagine that this was the registration
21   attached to the artwork 7851.  We keep close record of
22   those.
23        Q.    Okay.  And those were not produced to my
24   office.  So if I wanted to see that record, how would I
25   go about doing that?
```

```
 1        Q.   Ms. Ostling is someone you've identified as the
 2   person who designed style 7851, right?
 3        A.   Yes, that's correct.
 4        Q.   How do you know that?
 5        A.   How do we know that?
 6        Q.   Yes.  How do you know that?
 7        A.   Well, for every artwork that is made by one of
 8   our designers, they create an internal registration
 9   form.  Before we copyright anything, we require them to
10   show us how they made the artwork, reference previously
11   copyrighted artwork or from the design books that we
12   purchase.  There are design books that are purchased
13   from which you can extract motifs.  We want to know
14   exactly how they made the artwork.  Then it's signed off
15   on first by Lindsay who overlooks them immediately and
16   then it's brought over to me, and then I sign off on it.
17   And then only at that point do we register it and assign
18   a style number to it.
19        Q.   And the record of that activity is what you
20   call an internal registration form?
21        A.   That's right.
22        Q.   And are those internal registration forms kept
23   in your company's records?
24        A.   Yes.
25        Q.   Where are they actually kept?
```

```
 1        A.   In our office.
 2        Q.   Are they electronic records or paper records?
 3        A.   They're paper records and at the time she may
 4   have been getting paid hourly for her work, so I have to
 5   take a look whether it's per artwork or hourly.  But we
 6   do have record.
 7        Q.   Okay.  Did the manner in which you pay her
 8   change at some time?
 9        A.   Turia used to work for us part time and, you
10   know, so yes, her pay has changed over time.
11        Q.   You indicate in the front page of Exhibit 6 --
12   sorry.  Just about halfway down the page, you indicate
13   that the copyrights, the designs that are subject to
14   copyright 1-894-565 are works for hire.
15        A.   Uh-huh.
16        Q.   What led you to say that?
17             MR. BARRETT:  Objection.  Legal conclusion.
18        Q.   BY MR. ULIN:  You may answer.
19        A.   When speaking with -- when registering artwork,
20   we would speak with the Copyright Office and they would
21   ask us how the artwork was made and we would tell them.
22   Based on that, they would tell us how to fill out the
23   form.
24        Q.   And with respect to the 2014 Collection, do you
25   recall what you told the Copyright Office about how that
```

                                                                    98

```
 1   was comprised?
 2       A.   No.  We explain to them factually how it was
 3   comprised and they told us how to fill it out.
 4       Q.   Turning back to Exhibit 13, let me just back
 5   away from the exhibit for a minute.
 6            Is it your agreement with Ms. Ostling that when
 7   she creates designs that she sells you, you also
 8   purchase all the intellectual property rights in those
 9   designs?
10       A.   Absolutely.
11       Q.   Is she required to sell you all of the designs
12   that she produces?
13       A.   All the designs that she produces for us, yes.
14   And she's not allowed to share that with anybody else;
15   not allowed to share that with anybody else.  It is
16   exclusive to us.
17       Q.   That's reflected both in paragraphs 2 and 4 of
18   Exhibit 13; is that correct?
19       A.   I'd have to --
20       Q.   Please.
21       A.   Yes.
22       Q.   Do you recall Ms. Ostling submitting design
23   7851 in 2013?
24       A.   That goes to Lindsay.  So she doesn't submit it
25   directly to me.
```

99

```
 1                THE WITNESS:  J-U-N-G.
 2                MR. ULIN:  Thank you.
 3        Q.   BY MR. BARRETT:  Daniel, is that his given name
 4   or is that a nickname?
 5        A.   I think that's his American name.  I don't
 6   know -- he's a Korean gentleman.  I don't know what his
 7   Korean name is.
 8        Q.   Now, what does Standard Fabrics do -- I know
 9   there was some confusion earlier about you versus
10   Standard.  What does Standard Fabrics do when it finds a
11   garment that it believes to be printed with an
12   infringing pattern?
13        A.   100 percent of the time what we do is we create
14   a file for that garment.  In that file we place the
15   actual garment itself, we place a copy of the tags, all
16   the tags, all the labels as well as the receipt, as well
17   as all of the registration information pertaining to
18   that design.
19             Copies are made and all of them are put
20   together in one file 100 percent of the time as a matter
21   of procedure.
22        Q.   So the copyright information, the documents
23   that you mentioned, that is pulled directly from
24   Standard Fabrics' archives regarding the registration of
25   the particular design that Standard believes to have
```

146

```
 1   been infringed?
 2        A.   Yes.
 3        Q.   And for this case, was Exhibit 6 part of that
 4   file?
 5        A.   Yes, it was.
 6        Q.   So is it Standard Fabrics' understanding that
 7   the registration certificate marked as Exhibit 6
 8   corresponds to the design at issue in this case?
 9        A.   Yes.
10             MR. ULIN:  Asked and answered.  Calls for
11   speculation.  Lacks foundation.  You may answer.
12             THE WITNESS:  Yes, it does 100 percent.  In
13   fact, I provided that and I pulled that from our records
14   and I forwarded it over to my counsel.
15        Q.   BY MR. BARRETT:  It's standard procedure for
16   Standard Fabrics to compile those files and then forward
17   on to counsel?
18        A.   Absolutely, 100 percent of the time.  That's
19   exactly how we've done it and that's exactly how we
20   continue to do it.  It's never been any different.
21        Q.   We mentioned, or we discussed earlier about the
22   profit margin --
23        A.   Uh-huh.
24        Q.   -- per yard.
25             The specific invoices that we reviewed don't
```

147

1       I further certify that I am not a relative or
2  employee or attorney or counsel of any of the parties,
3  nor am I a relative or employee of such attorney or
4  counsel, nor am I financially interested in the outcome
5  of this action.
6
7       IN WITNESS WHEREOF, I have subscribed my name
8  this __16th__ day of __November__, __2015__.
9
10
11       _Judith Schlussel_
12       JUDITH SCHLUSSEL, CSR No. 4307
13
14
15
16
17
18
19
20
21
22
23
24
25

151